**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DAVID SWINBURNE, individually, and on behalf of all others similarly situated, | Civil Action No. 1:20-cv-917 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC., a New Jersey Corporation, and AUDI AG, a German corporation, | |
| Defendants. | |

**INTRODUCTION**

1.      Plaintiff David Swinburne ("Plaintiff") brings this action for himself and on behalf of all persons in the United States who purchased or leased any 2017-2020 model year Audi vehicle equipped with Audi's "Start/Stop Efficiency System" ("Start/Stop System" or the "System") ("Class Vehicles" or "Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Volkswagen Group of America, Inc., d/b/a Audi of America, Inc. ("VWGoA") and Audi AG (collectively, "Audi" or "Defendants").[1] Plaintiff alleges the following based on personal knowledge as to his own acts and as a result of the investigation conducted by his counsel.

2.      This action arises from Defendants' failure, despite their longstanding knowledge, to disclose to Plaintiff and other similarly situated consumers that the Class Vehicles have defective Start/Stop Systems that fail to function in a safe and reliable manner, as reasonably expected.

3.      According to Audi, the Start/Stop Efficiency System is designed to operate such that "[w]hen the driver presses the brake pedal at stoplights or in other prolonged idle situations, the

---

[1] On information and belief, this includes, without limitation, the 2019-2020 Audi A3 and 2017-2020 Audi A4, A5, A6, A7, Q3, Q5, Q7, and Q8 vehicles.

engine shuts off.  When the driver releases the brake pedal, the engine instantaneously starts up again."[2] Further, Audi states that, "[i]n Start/Stop mode, the engine shuts off automatically when stopped, for example at a traffic light. […] The engine will restart automatically when needed.  The Start/Stop system is automatically activated once the ignition is switched on."

4.      However, Audi failed to inform Plaintiff and Members of the Class before or during the time of sale that the Start/Stop Systems in Class Vehicles suffer from one or more defects (the "Start/Stop System Defect" or "Defect") that causes the vehicles' engines to lag, hesitate, or otherwise fail to immediately engage or restart when drivers attempt to accelerate from a full or rolling stop.  When this happens, drivers are unable to maneuver the vehicle, often stranding them in the middle of intersections or in similarly dangerous situations, such as when attempting to accelerate from a stop light or stop sign on roads and while merging onto highways or in heavy traffic.  Moreover, when the engine finally does restart after several seconds, drivers experience lurching and inconsistent acceleration and engagement of the throttle, placing them in even greater danger of colliding with oncoming vehicles.

5.      This Defect, which manifests itself within the limited warranty period, poses a serious safety risk to drivers, whose vehicle becomes unexpectedly inoperative and exposes them to increased risk of collision with other vehicles, road hazards, and/or pedestrians.

6.      Although Audi has known about the Defect for several years, instead of fixing it, Defendants continued to manufacture and sell new Audi vehicles with the Defect to consumers without disclosing it. Moreover, when Class Members bring their vehicles to Audi's authorized agents for inspection, diagnosis, and repair of the Defect, Class Members are informed that it is a known problem, there is no fix, and, on vehicles where the Start/Stop can be de-activated, the only recommendation provided by Audi's agents is that Class Members de-activate the Start/Stop System each time the ignition is started by manually pressing a separate button, an additional inconvenience and mandatory burden that is not disclosed to the Class Members at the time of the sale.

---

[2] https://newspress-audiusamedia.s3.amazonaws.com/documents%2Foriginal%2F966-news-2014-audi-a6-s6-media-kit.pdf

7.     The Defect is inherent in the Start/Stop Systems and is present at the time of sale. Because the Defect is inherent in every Start/Stop System, and Audi has either been unable, or refused, to actually repair the Defect, it is impossible to correct the Defect without disabling the entire System.

8.     On information and belief, the Class Vehicles utilize the same or substantially identical core vehicle components, and the Start/Stop System Defect is the same for all Class Vehicles.

9.     Defendants knew, or should have known, of this critical defect at the time of sale or shortly thereafter when numerous Members of the putative Class began complaining of the Defect at Defendants' authorized dealerships and to the National Highway and Traffic Safety Administration ("NHTSA"). Yet, notwithstanding this knowledge, Audi has routinely failed to fully repair the Class Vehicles when the Defect manifests. Moreover, Audi failed to disclose the Defect to Plaintiff and Class Members through its advertising, including on vehicle window stickers, in vehicle brochures, or at the point of sale or lease.

10.    Audi, an experienced and sophisticated vehicle manufacturer, learned of the Defect through, *inter alia*, (1) records from NHTSA, (2) public consumer complaints, (3) its own records of consumers' complaints, (4) dealership repair records and requests for technical assistance, (5) warranty and post-warranty claims, (6) pre- and post-release internal durability testing, (7) Technical Service Bulletins ("TSBs"), and (8) other various sources, yet failed to notify consumers prior to or at the time of purchase of the nature and extent of the Defect plaguing Class Vehicles, and failed to provide any adequate post-purchase remedy.

11.    Audi's efforts have been entirely inadequate in resolving the Defect or providing relief to the Class.  Moreover, Audi has failed to alert the Class Members of the true and unsafe nature of the Defect.

12.    Despite knowledge conveyed to Defendants by information from their affiliated dealerships, NHTSA consumer complaints, and its own internal records, including pre-release testing, Defendants have not recalled the Class Vehicles to repair the defective Start/Stop Systems

or offered consumers suitable repairs free of charge.

13.     In fact, rather than redesigning the defective components and installing non-defective components, Defendants purport to "repair" the Class Vehicles by performing ineffective or insufficient software updates and other procedures that fail to fully resolve the Defect, including disabling the entire system.

14.     If Plaintiff and Class Members had known about the Start/Stop System Defect at the time of sale or lease, Plaintiff and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

15.     As a result of their reliance on Defendants' omissions, the owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Start/Stop System Defect, Plaintiff and Class Members were harmed and suffered actual damages in that (1) the Class Vehicles are defective, (2) they overpaid for the Class Vehicles which contain a Defect, and (3) the Class Vehicles' Start/Stop Systems increase the risk of being involved in a collision due to the Vehicles' failure to instantaneously start upon the release of the brake pedal and/or attempted acceleration by the Class Members.

## JURISDICTION AND VENUE

16.     This action is properly before this Court and this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act. At least one Member of the proposed Class is a citizen of a different state than Audi, the number of proposed Class Members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

17.     Personal jurisdiction over Defendants is proper because Volkswagen Group of America, Inc.'s headquarters are located in this District, and all Defendants have purposefully availed themselves of the privilege of conducting business activities in Virginia, and throughout the United States, including, without limitation, marketing, warranting, distributing, and selling Class Vehicles to Plaintiff and similarly situated consumers.

18.     Audi, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this District such that personal jurisdiction is appropriate.  As such, Defendants are deemed to reside in this District and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

19.     In addition, under 28 U.S.C.  § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

## THE PARTIES

### Plaintiff David Swinburne

20.     Plaintiff David Swinburne ("Plaintiff Swinburne") is a Florida citizen, who resides in St. Pete Beach, Florida. On or around August 14, 2017, Plaintiff Swinburne purchased a new 2018 Audi Q5 from Audi Clearwater, an authorized Audi dealer in Clearwater, Florida.

21.     Plaintiff Swinburne purchased his vehicle primarily for personal, family, or household use. Audi manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

22.     Passenger safety, vehicle performance, gas mileage, reliability, and brand reputation were all factors in Plaintiff Swinburne's decision to purchase the Vehicle. Before purchasing his Class Vehicle, Plaintiff Swinburne spent several months researching his potential purchase, which included reviewing available information about the 2018 Audi Q5 on websites such as Audi-USA, MotorTrend, Car & Driver, Automobile, Edmunds and Kelley Blue Book.

23.     Almost immediately following his purchase, Plaintiff Swinburne began experiencing delayed acceleration and hesitation from full and rolling stops, causing potentially dangerous collisions.  On many occasions, the hesitation and delays in acceleration during the "Start" phase of the Start/Stop System occurred while attempting to turn left from intersections, where these delays placed Plaintiff Swinburne directly at risk of being hit by oncoming traffic.

Further, Plaintiff Swinburne's wife is too afraid to drive the Vehicle since experiencing these symptoms of the Start/Stop System Defect.  Plaintiff Swinburne reported these problems on several occasions to Audi, through its authorized representative dealer, and was informed that there was "no trouble found."

24.     On July 31, 2019, Plaintiff Swinburne filed a complaint with NHTSA regarding the issue.  The complaint (NHTSA ID 11240812) stated:

> WHEN DEPRESSING GAS PEDAL FROM STOPPED (OR NEAR STOPPED) POSITION, THE VEHICLE FAILS TO RESPOND BEFORE MOVING FORWARD. THIS MOST FREQUENTLY OCCURS WHEN PULLING ONTO OR CROSSING A STREET, AND I'M CONCERNED IT WILL EVENTUALLY BE THE CAUSE OF AN ACCIDENT. THE DEALER HAS CHECKED THIS SEVERAL TIMES, BUT SAYS THAT THE RECORDER SHOWS NO PROBLEM. IT DOES NOT OCCUR EVERY TIME, AND NO DEFAULT IS RECORDED, BUT IT CONTINUES TO OCCUR EVEN AFTER ALMOST TWO YEARS. DEALER HAS A NUMBER OF SERVICE REQUESTS FOR THIS ISSUE, ALL MARKED AS NTF. I ALSO HAVE COPIES OF 10 OR MORE EMAIL COMPLAINTS TO DEALER THAT CAN BE MADE AVAILABLE IS REQUESTED. ONLY THE LATEST DATE IS NOTED BELOW - IT HAPPENS ALMOST EVERY WEEK.

25.     Plaintiff Swinburne's vehicle continues to exhibit the problems previously reported to the authorized Audi dealer, yet no repairs have been performed.

26.     Audi's authorized dealership has failed to adequately repair Plaintiff Swinburne's vehicle or even acknowledge the Start/Stop System Defect. Despite being given numerous opportunities to repair the Defect, the Start/Stop System in Plaintiff Swinburne's Class Vehicle continues to exhibit delays in acceleration following both full and rolling stops.

27.     Audi's omissions were material to Plaintiff Swinburne. Had Audi disclosed its knowledge of the Defect before Plaintiff Swinburne purchased his 2018 Audi Q5, he would have

seen and known about the Defect.  Like all Class Members, Plaintiff would not have purchased his 2018 Audi Q5, or would not have paid the purchase price charged by Audi, had he known that the Start/Stop System is prone to cause the Vehicles' engines to lag, hesitate, or otherwise fail to immediately engage or restart when drivers attempt to accelerate from a full or rolling stop.

28.     At all times, Plaintiff, like all Class Members, has attempted to drive his Vehicle in a foreseeable manner and in the manner in which it was intended to be used, in the sense that Plaintiff has not abused his Vehicle or used it for purposes unintended by Defendants, such as drag racing, for example. However, despite his normal and foreseeable driving, the Defect has rendered his Vehicle unsafe and unfit to be used as intended.

**Defendants**

29.     Defendant Volkswagen Group of America, Inc., d/b/a Audi of America, Inc., is a New Jersey corporation with its principal place of business located at 220 Ferdinand Porsche Drive, Herndon, Virginia 20171.

30.     VWGoA, itself and through its affiliates, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in Florida.  VWGoA is the warrantor and distributor of the Class Vehicles in the United States.

31.     At all relevant times, VWGoA was and is engaged in the business of marketing, distributing, and selling automobiles in Virginia and throughout the United States of America.

32.     VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

33.     Defendant Audi AG is a German corporation headquartered in Ingolstadt, Germany, and is a wholly-owned subsidiary of Volkswagen AG.

34.     Audi AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi-branded vehicles and parts for those vehicles worldwide, including in the United States.

## FACTUAL ALLEGATIONS

35.     Audi designs, manufactures, markets, distributes, and warrants automobiles in the United States sold under various brand names, including the Volkswagen and Audi brands.[3] Audi has hundreds of authorized dealerships across the United States, all of which are under Defendants' control.  Audi authorizes these dealerships to sell Audi vehicles, parts, and accessories, and to service and repair Audi vehicles using Audi parts.[4]

36.     Audi designed, manufactured, and distributed the Class Vehicles. Audi has sold or leased, directly or indirectly, through dealers and other retail outlets, tens of thousands of Class Vehicles equipped with the Start/Stop System throughout the United States.   In 2019, Audi delivered 216,844 Class Vehicles in the United States alone.[5]

37.     In 2014, Audi announced that, in "continuing the brand's commitment to delivering impressive performance and improved efficiency, the A6 3.0T and A6 TDI [would be] equipped standard with the convenient and fuel-saving Start/Stop efficiency system.  When the driver presses the brake pedal at stoplights or in other prolonged idle situations, the engine shuts off.  When the driver releases the brake pedal, the engine *instantaneously* starts up again."[6] Audi has since equipped each of the Class Vehicles with the same Start/Stop Efficiency System.

38.     According to Audi, "[t]he Start/Stop system can help increase fuel economy and reduce $CO_2$ emissions."[7]  Further, Audi promises that:

"In Start/Stop mode, the engine shuts off automatically when stopped, for example at a traffic light.  The ignition and important assist systems such as power steering and the brake booster will remain available during the Stop phase.  The engine will restart automatically when needed.

The Start/Stop system is automatically activated once the ignition is switched on."

---

[3] https://www.audi.com/en/company/investor-relations/reports-and-key-figures/annual-reports. html

[4] https://media.audiusa.com/company-information

[5] http://media.audiusa.com/en-us/releases/375

[6] https://newspress-audiusamedia.s3.amazonaws.com/documents%2Foriginal%2F966-news-2014-audi-a6-s6-media-kit.pdf (emphasis added).

[7] 2020 Audi Q3, Official Owner's Manual, p. 90 (July 2019).

39.     Rather than delivering the "impressive performance and improved efficiency" touted by Audi, the Stop-Stop Efficiency System, in fact, suffers from the Defect, which causes the Vehicles' engine to lag, hesitate, or otherwise fail to immediately engage or restart when drivers attempt to accelerate from a full or rolling stop.  When this happens, drivers are unable to maneuver the Vehicle, often stranding them in the middle of intersections.  Moreover, when the engine finally does restart after several seconds, drivers experience lurching and inconsistent acceleration and engagement of the throttle.

### The Defective Start/Stop Systems Pose an Unreasonable Safety Hazard

40.     Although marketed as "convenient and fuel-saving," the Start/Stop Efficiency System has been anything but, according to owners of the Class Vehicles.  The Start/Stop Defect is material to consumers because it presents a serious safety concern.  Class Vehicle owners have repeatedly reported unsafe conditions caused by the defective Start/Stop Systems, including, without limitation, the Vehicles turning off and failing to restart in the middle of intersections and at traffic stops and/or upon restart, the Vehicles lurching forward into oncoming traffic.  These safety risks increase the likelihood of collision and injury to drivers and pedestrians.  The following are just some of the many safety-related complaints that describe the Start/Stop Defect in Class Vehicles (spelling and grammar mistakes remain as found in the original) (Safercar.gov, Search for Complaints (August 3, 2020), http://www- odi.nhtsa.dot.gov/complaints/).

   a)  **2017 Audi A3**
**Date of Complaint:** July 14, 2017
**NHTSA ID Number:** 11005273
ON 4/27/17 ANOTHER INCIDENT OCCURRED. WHILE AT A TRAFFIC LIGHT, MAKING A LEFT HAND TURN, THE VEHICLE STOPPED. THE VEHICLE BEHIND MY DAUGHTER WAS ALSO TURNING RIGHT BEHIND HER AND ALMOST REAR ENDED HER SINCE EVEN THE BRAKE LIGHTS WERE NOT WORKING T. IN THE MIDDLE OF THE TRAFFIC INTERSECTION, THE VEHICLE WAS NOT RESPONDING TO THE SHIFTING OF GEARS OR TO THE ACCELERATOR. AT THIS POINT THAT VEHICLE WAS NOT RESPONDING AT ALL LEAVING MY DAUGHTER STRANDED IN THE MIDDLE OF ONCOMING CARS AND AGITATED DRIVERS AROUND HER. THE COLLECTION HAD THE VEHICLE TOWED BACK TO THEIR SHOP WHERE IT HAS BEEN EVER SINCE. NO ONE, NOT EVEN AUDI'S CORPORATE HEAD ENGINEER HAS BEEN ABLE TO FIGURE OUT WHAT IS

WRONG WITH THE VEHICLE.

### b) **2018 Audi Q5**
**Date of Complaint:** July 31, 2019
**NHTSA ID Number:** 11240812
WHEN DEPRESSING GAS PEDAL FROM STOPPED (OR NEAR STOPPED) POSITION, THE VEHICLE FAILS TO RESPOND BEFORE MOVING FORWARD. THIS MOST FREQUENTLY OCCURS WHEN PULLING ONTO OR CROSSING A STREET, AND I'M CONCERNED IT WILL EVENTUALLY BE THE CAUSE OF AN ACCIDENT. THE DEALER HAS CHECKED THIS SEVERAL TIMES, BUT SAYS THAT THE RECORDER SHOWS NO PROBLEM. IT DOES NOT OCCUR EVERY TIME, AND NO DEFAULT IS RECORDED, BUT IT CONTINUES TO OCCUR EVEN AFTER ALMOST TWO YEARS. DEALER HAS A NUMBER OF SERVICE REQUESTS FOR THIS ISSUE, ALL MARKED AS NTF. I ALSO HAVE COPIES OF 10 OR MORE EMAIL COMPLAINTS TO DEALER THAT CAN BE MADE AVAILABLE IS REQUESTED. ONLY THE LATEST DATE IS NOTED BELOW - IT HAPPENS ALMOST EVERY WEEK.

### c) **2018 Audi Q7**
**Date of Complaint**: May 15, 2018
**NHTSA ID Number**: 11093960
WHEN ATTEMPTING TO CROSSOVER A BUSY INTERSECTION, AND TRYING TO DETERMINE THE DISTANCE BETWEEN THE ONCOMING TRAFFIC AND MYSELF, THE 2018 AUDI Q7, HAS A HESITATION BEFORE THE VEHICLE STARTS IT ACCELERATION. I HAVE HAD TWO OCCASIONS WHERE THE VEHICLE JUST WOULD START A SLOW ACCELERATION BUT WOULD HESITATE BEFORE ENGAGING AT ITS HIGHER ACCELERATION. THIS CAUSING THE ONCOMING VEHICLES NEARLY HITTING MY VEHICLE. I HAVE TAKEN THIS TO THE LOCAL AUDI DEALERSHIP AND SAID THAT IS NORMAL. I VALIDATED THE OPERATION, WHEN THEY LET ME TEST A NEW AUDI Q7, AND HAD SIMILAR OR WORSE SYMPTOMS. THEIR ONLY WORK AROUND IS TO ENGAGE THE VEHICLE INTO "SPORT" MODE. THAT MODE HELPS WITH THE RESPONSE. BASICALLY IF, I STEP ON THE GAS PEDDLE, I SHOULD EXPECT IT TO DRIVE AND BE RESPONSIVE AND NOT HESITATE. HAVING THAT HESITATION, MAKE IT VERY DIFFICULT TO DETERMINE WHEN ACCELERATE.

### d) **2019 Audi Q7**
**Date of Complaint:** February 7, 2020
**NHTSA ID Number:** 11307668
MY 2019 AUDI Q7 HAS THROTTLE DELAY PROBLEMS THAT HAVE RESULTED IN NEAR ACCIDENTS MORE THAN ONCE DUE TO NO RESPONSE OF ACCELERATOR UNTIL 3 OR 4 SECONDS AFTER DEPRESSING GAS PEDDLE WHEN ATTEMPTING TO MERGE INTO TRAFFIC. THE DEALER COULD NOT DUPLICATE THIS PROBLEM WHICH HAS OCCURRED RANDOMLY OVER THE PAST YEAR OF OWNERSHIP.

**e) <u>2020 Audi Q3</u>**
**Date of Complaint:** November 3, 2019
**NHTSA ID Number:** 11277932
WHEN THE AUTO START-STOP FUNCTION ACTIVATES (TURNING THE ENGINE OFF), THE STEERING WHEEL LOCKS. THE CAR CAN CONTINUE TO ROLL WHEN YOU LET YOUR FOOT OFF THE BRAKE TO START MOVING AGAIN, BUT THE STEERING WHEEL REMAINS LOCKED NOT ALLOWING YOU TO STEER THE CAR WHEN NECESSARY. I ALMOST GOT HIT BECAUSE OF THIS AND IT IS VERY SCARY NOT TO BE ABLE TO STEER OUT OF THE WAY WHEN NECESSARY!!! THIS IS HORRIBLE FUNCTION OF THE CAR WHICH CAN CAUSE A LOT OF ACCIDENTS!!

41.     Additionally, complaints posted by consumers in Audi internet forums demonstrate that the Defect is widespread and dangerous, and that it manifests without warning.  The complaints also indicate Audi's awareness of the severe problems with the Start/Stop System and how potentially dangerous the Defect is for consumers.

42.     The Start/Stop System Defect poses an unreasonable safety risk for Class Members, other drivers, and pedestrians, and is a safety hazard to the general public in that it increases the risk of automobile collisions and injuries.

<b>Audi's Knowledge of the Defect</b>

43.     Audi had superior and exclusive knowledge of the Start/Stop System Defect and knew or should have known that the Defect was not known or reasonably discoverable by the Plaintiff and the Class Members before they purchased or leased their Class Vehicles.

44.     Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased his Class Vehicle, and since at least 2016, Audi knew about the Start/Stop System Defect through sources not available to consumers, including, without limitation: pre-release testing data performed by Audi; early consumer complaints to Audi representatives about the Start/Stop System Defect; warranty claims data related to the Defect; aggregate data reported to Audi from its authorized dealers; consumer complaints to NHTSA; early consumer complaints on websites and internet forums that are monitored by Audi; dealership repair orders; testing conducted in response to owner or lessee complaints; and other internal sources of aggregate information that is not available to the public.

11

45.     Based on publicly available information, Audi has issued several Technical Service Bulletins ("TSBs") to its authorized dealers in response to knowledge of the Start/Stop System Defect.  On April 28, 2017, Audi issued TSB 00 17 91 2045316[8], titled "Start-stop system workshop information," stating that "customer may report: the start/stop system does not shutdown when the driver thinks it should; the engine is not automatically switched off or on; and the engine restarts from start/stop for reasons unknown to the driver." However, no fixes were provided by Audi at the time.  On November 21, 2018, Audi amended the TSB to include 2018 and 2019 model year vehicles but, again, provided no fix for consumers' concerns.

46.     Then, on November 22, 2019, Audi issued TSB 48 19 83 2057796/1 for all 2019-2020 Q3 vehicles, titled "Start-stop steering assist is delayed," stating that "[t]here is a delay of power steering assist after the engine restarts from a Start/Stop event."  Further, Audi specifically instructed its representatives to "not replace any components related to the Start/Stop system", admitting as well that:

> "If the engine is off during a Start/Stop event and the brake pedal is released, the car starts to move forward in creep (without applying the throttle) but the power steering has no assist for a short period of time.
>
> The vehicle is operating as designed."

47.     Then, on June 2, 2020, Audi issued TSB 24FR Update – Servicing Start/Stop System, which provided for a software update in approximately 20,000 2019 Audi A6 and A7 vehicles.  The TSB states that it was "released to prevent the following condition(s) from occurring in the vehicle: engine doesn't restart after start/stop shut off, driver must restart engine manually."

48.     Importantly, these TSBs were not, and are not, disseminated to owners or prospective customers.

49.     Federal law requires automakers like Audi to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal

---

[8] Affected vehicles included 2013-2016 Audi A7, 2013-2017 Audi A6, A8, Q5, 2016-2017 Audi A4, S6, Q7, TT, TT S, and 2017 Audi A3, A5, S3, S4, SQ5 vehicles.

penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act*, Pub. L. No. 106-414, 114 Stat.1800 (2000).

50.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* Thus, Audi knew or should have known of the many complaints about the Start/Stop Defect logged by NHTSA Office of Defects Investigation ("ODI"). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Audi to the Start/Stop System Defect.

51.     With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the Start/Stop System Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that Audi, through its network of dealers and repair technicians, has been made aware of the Start/Stop System Defect. In addition, the complaints indicate that despite having knowledge of the Start/Stop System Defect, and even armed with knowledge of the exact vehicles affected, Audi often refused to diagnose the defect or otherwise attempt to perform repairs while the Class Vehicles were still under warranty. Rather, Audi informed consumers that the Vehicles were, and are, operating normally.

**2018 Audi Q5**

a)  **Date of Complaint**: July 31, 2019
    **NHTSA ID Number:** 11240812
    WHEN DEPRESSING GAS PEDAL FROM STOPPED (OR NEAR STOPPED) POSITION, THE VEHICLE FAILS TO RESPOND BEFORE MOVING FORWARD. THIS MOST FREQUENTLY OCCURS WHEN PULLING ONTO OR CROSSING A STREET, AND I'M CONCERNED IT WILL EVENTUALLY BE THE CAUSE OF AN ACCIDENT. THE DEALER HAS CHECKED THIS SEVERAL TIMES, BUT SAYS THAT THE RECORDER SHOWS NO PROBLEM. IT DOES NOT OCCUR EVERY TIME, AND NO DEFAULT IS RECORDED, BUT IT CONTINUES TO OCCUR EVEN AFTER ALMOST TWO YEARS. DEALER HAS A NUMBER OF SERVICE REQUESTS FOR THIS ISSUE, ALL MARKED AS NTF. I ALSO HAVE COPIES OF

10 OR MORE EMAIL COMPLAINTS TO DEALER THAT CAN BE MADE AVAILABLE IS REQUESTED. ONLY THE LATEST DATE IS NOTED BELOW - IT HAPPENS ALMOST EVERY WEEK.

## 2018 Audi Q7

b) **Date of Complaint**: May 15, 2018
**NHTSA ID Number:** 11093960
WHEN ATTEMPTING TO CROSSOVER A BUSY INTERSECTION, AND TRYING TO DETERMINE THE DISTANCE BETWEEN THE ONCOMING TRAFFIC AND MYSELF, THE 2018 AUDI Q7, HAS A HESITATION BEFORE THE VEHICLE STARTS IT ACCELERATION. I HAVE HAD TWO OCCASIONS WHERE THE VEHICLE JUST WOULD START A SLOW ACCELERATION BUT WOULD HESITATE BEFORE ENGAGING AT ITS HIGHER ACCELERATION. THIS CAUSING THE ONCOMING VEHICLES NEARLY HITTING MY VEHICLE. I HAVE TAKEN THIS TO THE LOCAL AUDI DEALERSHIP AND SAID THAT IS NORMAL. I VALIDATED THE OPERATION, WHEN THEY LET ME TEST A NEW AUDI Q7, AND HAD SIMILAR OR WORSE SYMPTOMS. THEIR ONLY WORK AROUND IS TO ENGAGE THE VEHICLE INTO "SPORT" MODE. THAT MODE HELPS WITH THE RESPONSE. BASICALLY IF, I STEP ON THE GAS PEDDLE, I SHOULD EXPECT IT TO DRIVE AND BE RESPONSIVE AND NOT HESITATE. HAVING THAT HESITATION, MAKE IT VERY DIFFICULT TO DETERMINE WHEN ACCELERATE.

## 2019 Audi A6

c) **Date of Complaint**: September 23, 2019
  o **NHTSA ID Number:** 11257546
  o THIS ISSUE HAPPENS WHEN THE CAR IS STOPPED AND THE AUTO STOP/START FEATURE HAS STOPPED THE ENGINE. MOST COMMONLY AT A STOP LIGHT AT A MAJOR CITY INTERSECTION, WHERE THE LIGHTS ARE LONGER. WHEN THE SYSTEM ATTEMPTS TO RESTART THE ENGINE, IT ROUGH IDLES AND THEN THE DRIVE SYSTEM SHUTS DOWN THE ENGINE, CAUSING YOU TOO LOSE ALL POWER. THIS LEAVES YOU STRANDED, AND RISKS CAUSING SOMEONE TO REAR-END YOUR VEHICLE IF THE LIGHT CHANGES. PUTTING THE CAR IN PARK, TURNING OFF THE IGNITION, AND THEN TURNING THE IGNITION BACK ON RESUMES ENGINE FUNCTION. THIS HAS HAPPENED MULTIPLE TIMES. SO FAR THE SERVICE CENTER HAS BEEN UNABLE TO IDENTIFY THE ROOT CAUSE.

d) **Date of Complaint**: October 15, 2019
**NHTSA ID Number:** 11268751
I PURCHASED ANEW AUDI A6 ON SEP 11, 2019. IN THE FIRST 2 WEEKS, FIVE DIFFERENT TIMES, THE "START STOP SYSTEM" FAILED TO WORK PROPERLY. I WOULD BE STOPPED AND WHEN I TRIED TO START AGAIN THE ENGINE WOULD DIE. IN ORDER TO START THE CAR BACK UP, I HAD TO PUT

THE CAR IN PARK AND RESTART USING THE START BUTTON. THIS
RESULTED IN AN UNSAFE CONDITION. THE FIRST TIME, I WAS ON A STEEP
INCLINE AND THE CAR STARTED TO ROLL BACKWARDS. ANOTHER TIME A
FIRE TRUCK WAS TRYING TO GET THROUGH ON A TWO LANE ROAD AND I
COULD NOT GET THE CAR STARTED BACK UP TO PULL FURTHER OVER ON
THE ROAD. THE CAR HAS BEEN TO SERVICE TWICE. THEY COULD NOT FIND
THE PROBLEM. THE SERVICE DEPARTMENT KEPT AND DROVE THE CAR BUT
THIS START STOP ISSUE DID NOT OCCUR AGAIN. I HAVE BEEN DRIVING THE
CAR SOME FOR THE LAST TWO WEEKS AND HAVE NOT HAD THIS PROBLEM
OCCUR AGAIN.

e) **Date of Complaint**: January 15, 2020
   **NHTSA ID Number:** 11299645
   I ACQUIRED THIS CAR (2.0T) TWO NIGHTS AGO AND ON THREE OCCASIONS
   (SO FAR) THE ENGINE COMPLETELY STALLS WHEN THE CAR COMES TO A
   STOP. NOT THE TYPICAL AUTO ON/OFF FEATURE FUNCTION. I HAVE TO
   RESTART THE IGNITION AND PUT THE CAR IN DRIVE AGAIN. ONCE, EVEN IN
   THE MIDDLE OF RUSH HOUR TRAFFIC. SO FAR, THE ONLY CONSISTENT
   SCENARIO IS WHEN I AM ON THE SECOND LEG OF A TRIP. FOR EXAMPLE, I
   GET IN THE CAR AT MY OFFICE, DRIVE TO A STORE OR DAYCARE. GET
   BACK IN THE CAR, START UP, DRIVE A COUPLE OF MILES AND THE CAR
   SHUTS DOWN AT A COMPLETE STOP. VERY UNNERVING ON A BRAND NEW
   CAR WITH LESS THAN 200 MILES ON IT. I'VE LOOKED ACROSS THE
   INTERNET AND IT SEEMS TO BE QUITE A WIDESPREAD ISSUE FOR VW AND
   AUDI DRIVERS OF RECENT MODEL CARS. THIS IS A SAFETY CONCERN AND
   NEEDS TO BE ADDRESSED.

f) **Date of Complaint**: June 19, 2020
   **NHTSA ID Number:** 11329769
   AT A STOP LIGHT THE ENGINE WILL SHUT OFF COMPLETELY REQUIRING
   YOU TO RESTART THE CAR. THIS HAPPENS INTERMITTENTLY AND
   HAPPENS WHEN THE AUTO ON/OFF IS ON OR OFF. LEADS TO DANGEROUS
   SITUATIONS WHEN IN CITY TRAFFIC OR STOPPED AT A RED LIGHT ON
   HIGHWAY. TWO TRIPS TO AUDI AND THERE ARE NO ERROR CODES ON THE
   ENGINE TO DIAGNOSE THE ISSUE. MAKES FOR VERY NERVOUS DRIVING
   WHEN EVERY STOP LIGHT MAY CAUSE YOUR CAR TO STALL. MOST
   RECENT ISSUE THE CAR WOULD RE-START AND IMMEDIATELY STALL, AND
   THEN STARTED SHAKING VIOLENTLY.

**2019 Audi A7**

g) **Date of Complaint**: January 24, 2019
   **NHTSA ID Number:** 11171934
   I STARTED EXPERIENCING ISSUES WITH THE AUTO/SHUT AS WHEN THE
   CAR GET STOPPED AT A SIGNAL, IT DOESN'T START AND HAVE TO RESTART
   THE CAR AND LATER I HAD ISSUE WITH DRIVE SHIFT GOING INTO

NEUTRAL WHEN I SHIFT IT FROM "D" DRIVE MORE TO "S" SPORTS MODE ON FREEWAY. PLEASE CONTACT ME TO GET MORE DETAIL ON IT.]

h) **Date of Complaint**: March 19, 2019
**NHTSA ID Number:** 11190060
AT A STOPLIGHT, OR STOP SIGN, WHERE THERE IS EVEN THE SLIGHTEST INCLINE, AFTER MY 2019 AUDI A7 HAS COME TO A COMPLETE STOP, AND THE ENGINE SHUTS OFF, WHEN I REMOVE MY FOOT FROM THE BRAKE TO ENGAGE THE GAS PEDAL, THE ENGINE DOES NOT ENGAGE IMMEDIATELY AND THE CAR SHOOTS/ROLLS BACKWARDS. THE ROLLBACK IS SIGNIFICANT ENOUGH THAT THE REAR CAMERA TURNS ON. BECAUSE OF THE LAPSE IN TIME BEFORE THE ENGINE ENGAGES AGAIN, I HAVE NO CONTROL OVER THE VEHICLE WHEN THIS HAPPENS AND AM UNABLE TO KEEP IT FROM SHOOTING BACKWARDS
I'VE SPOKEN TO MY SALES REPRESENTATIVE AND AUDI'S CUSTOMER SERVICE, AND HAVE HAD THE VEHICLE LOOKED AT BY TECHNICIANS AT BOTH THE FAIRFIELD AND DANBURY CONNECTICUT AUDI LOCATIONS, AND HAVE NOT BEEN GIVEN A SOLUTION TO THE PROBLEM. IN FACT, I HAVE BEEN TOLD ON SEVERAL OCCASIONS, AND HAVE SAVED VOICEMAILS FROM AUDI SERVICE, THAT ALL THEIR VEHICLES ARE DOING THIS BECAUSE OF THE DOUBLE-CLUTCH, THAT IT IS "COMPLETELY NORMAL," AND THAT I WOULD JUST HAVE TO ADJUST MY DRIVING. BECAUSE I HAVE NO CONTROL OVER THE CAR WHEN IT DOES THIS, AND AUDI IS NOT RESOLVING THE ISSUE FOR ME, THIS IS GOING TO LEAVE ME OPEN TO LIABILITY SHOULD THE CAR ROLL/SHOOT BACK INTO ANY VEHICLE STOPPED BEHIND ME, OR PERSON WHO MAY WALK BEHIND MY CAR WHEN I AM STOPPED. I AM FRIGHTENED TO DRIVE THIS CAR FOR FEAR OF INJURING OR KILLING SOMEONE, AND HAVEN'T DRIVEN THE CAR IN OVER A MONTH.

i) **Date of Complaint**: June 27, 2019
**NHTSA ID Number:** 11222888
SECOND ISSUE IS THAT THERE IS A SIGNIFICANT 1-3 SECOND LAG AFTER PRESSING THE ACCELERATOR PEDAL. THIS IS VERY DANGEROUS WHEN TAKING LEFT/RIGHT TURNS WITH CARS ON THE COMING ROAD.

j) **Date of Complaint**: February 1, 2020
**NHTSA ID Number:** 11306437
THE START STOP SYSTEM IS ALWAYS ACTIVE UPON EACH DRIVING SESSION OF THE VEHICLE. HOWEVER AT TIMES THE HYBRID SYSTEM WHEN IT KICKS IN, DOESN'T ACTIVATE THE ENGINE QUICKLY ENOUGH SO WHEN I PRESS THE GAS PEDAL IT IS NOT RESPONSIVE AND I CAN'T PROPEL FORWARD. THIS IS OF CONCERN WHEN I'M NOT AT A TRAFFIC LIGHT AND THE START STOP SYSTEM KICKS IN DURING STOP AND GO TRAFFIC.

**2019 Audi Q3**

k) **Date of Complaint**: January 27, 2020
**NHTSA ID Number:** 11302365
VEHICLE IS EQUIPPED WITH AN AUTO START/STOP FEATURE. WHEN
STOPPED AT STOPLIGHTS, INTERSECTIONS, ETC, THE VEHICLE ENGINE
WILL TURN OFF. WHEN DRIVER'S FOOT IS REMOVED FROM BRAKE PETAL,
THE ENGINE REACTIVATES. HOWEVER, ON NUMEROUS OCCASIONS, THE
POWER STEERING DID NOT REACTIVATE UNTIL 1-2 SECONDS AFTER THE
ENGINE RESTARTS. THIS LEFT ME WITH NO CONTROL OF VEHICLE
STEERING (AS I WAS UNABLE TO EASILY TURN THE STEERING WHEEL).
THIS RESULTED IN SEVERAL PROBLEMATIC INCIDENTS WHERE, FOR
EXAMPLE, THE ENGINE DISENGAGED WHILE I WAS INCHING INTO A LEFT-
HAND TURN THROUGH AN INTERSECTION. WHEN I ATTEMPTED TO THEN
START MY TURN, THE ENGINE RE-ENGAGED, BUT I WAS UNABLE TO TURN
THE STEERING WHEEL, CAUSING ME TO DRIVE FORWARD (TOWARD
ONCOMING TRAFFIC) INSTEAD OF BEING ABLE TO TURN THE WHEEL LEFT
TO COMPLETE MY TURN. SIMILAR EVENTS HAVE HAPPENED ON SEVERAL
OCCASIONS.

**2019 Audi Q7**

l) **Date of Complaint**: January 22, 2020
**NHTSA ID Number:** 11301185
THERE IS TYPICALLY A DELAY OF ABOUT 3 SECONDS BEFORE THE CAR
RESPONDS AND WHEN IT DOES I HAVE THE PEDAL TO THE FLOOR AND THE
CAR LUNGES FORWARD. ONE DELAY WAS ABOUT 6 SECONDS. ON ONE
OCCASION I WAS TURNING LEFT INTO A BUSY INTERSECTION AND THE
DELAY OCCURRED. AN ONCOMING CAR HAD TO BRAKE TO AVOID HITTING
ME BROADSIDE. THE PROBLEM IS INTERMITTENT BUT OCCURS ALMOST
DAILY AT LEAST ONCE. IT CAN OCCUR FROM A DEAD STOP BUT MORE
FREQUENTLY OCCURS AT LOW SPEEDS. I TOOK THE CAR BACK TO THE
AUDI DEALER AND WAS GIVEN A Q8 AS A LOANER. THIS LOANER Q8 ALSO
HAD THE SAME PROBLEM. I COULD MINIMIZE THE PROBLEM BY TURNING
OFF THE AUTO START STOP BUTTON AND DRIVING THE CAR IN S MODE.
THIS HAD NOT HELPED THE PROBLEM WITH THE Q7. AN ACQUAINTANCE
OF MINE BOUGHT A Q8 RECENTLY AND HAS HAD THE SAME ISSUE TWO
TIMES. I HAD THE ISSUE ABOUT 10 TIMES WITH THE LOANER Q8 AND
HUNDREDS OF TIMES WITH THE Q7. I FEEL UNSAFE DRIVING THE Q7 AND
HAVE PARKED IT IN MY DRIVEWAY. I DO NOT PLAN TO DRIVE IT AGAIN. AT
THIS POINT I DO NOT KNOW WHAT I WILL DO WITH IT. I PURCHASED
ANOTHER VEHICLE TO DRIVE INSTEAD.

m) **Date of Complaint**: February 7, 2020
**NHTSA ID Number:** 11307668
MY 2019 AUDI Q7 HAS THROTTLE DELAY PROBLEMS THAT HAVE RESULTED
IN NEAR ACCIDENTS MORE THAN ONCE DUE TO NO RESPONSE OF
ACCELERATOR UNTIL 3 OR 4 SECONDS AFTER DEPRESSING GAS PEDDLE
WHEN ATTEMPTING TO MERGE INTO TRAFFIC. THE DEALER COULD NOT

DUPLICATE THIS PROBLEM WHICH HAS OCCURRED RANDOMLY OVER THE PAST YEAR OF OWNERSHIP.

n) **Date of Complaint**: May 4, 2020
   **NHTSA ID Number:** 11323192
   FROM TIME TO TIME, AFTER THE AUTO ENGINE SHUTOFF ENGAGES, WHEN I RELEASE THE BRAKE AND THE ENGINE RESTARTS, POWER STEERING ISN'T AVAILABLE FOR ROUGHLY 5 SECONDS (THE CAR IS UN-STEERABLE). THIS HAPPENS WHEN THE CAR IS AT A COMPLETE STOP, AND I'M ATTEMPTING TO START MOVING AGAIN. I'VE LEARNED TO PUT THE CAR INTO "SPORT MODE" SO I DON'T RISK MY LIFE AND MY FAMILIES LIVES. THE DEALERSHIP CLAIMS THERE IS NOTHING WRONG WITH THE VEHICLE. :(

**2019 Audi Q8**

o) **Date of Complaint**: June 11, 2019
   **NHTSA ID Number:** 11219348
   THE AUTO STOP/START SYSTEM ON THE AUDI Q8 PRESENTS A DANGEROUS SITUATION WHEN A DRIVER ATTEMPTS TO ACCELERATE FROM A COMPLETE STOP. FREQUENTLY, WHEN I DO THIS (WITH THE AUTO STOP/START ENGAGED - IT'S DEFAULT SETTING) THE CAR WILL NOT MOVE FOR APPROXIMATELY 2-4 SECONDS. WHEN IT DOES ENGAGE, IT FINALLY DOES SO WITH EXCESSIVE FORCE. THIS IS PARTICULARLY DANGEROUS WHEN TAKING A LEFT HAND TURN EITHER ACROSS A LANE OF TRAFFIC OR TAKING A LEFT TURN ONTO A ROAD. FOR THE DRIVER, IT'S VERY DISCONCERTING AS (1) YOU DON'T GET THE POWER WHEN YOU WANT OR NEED IT AND (2) WHEN THE POWER FINALLY DOES COME, IT'S EXCESSIVE AND IF YOU MAY NEED TO SLAM THE BRAKES ON TO AVOID TRAFFIC THAT YOU WERE NOT EXPECTING TO BE CLOSE WHEN YOU FIRST BEGAN THE TURN. THIS HAPPENS REPEATEDLY. IF THE AUTO STOP/START SYSTEM IS DISENGAGED, THEN THIS BEHAVIOR GOES AWAY AND THE CAR OPERATES AS EXPECTED. HOWEVER IT RELIES ON THE DRIVER TO REMEMBER TO DISABLE THE "FEATURE" EACH AND EVERY TIME. FOR SOMEONE LIKE MY WIFE, WHO WILL USE THE CAR A FEW TIMES EACH YEAR (WHEN HER CAR IS UNAVAILABLE), SHE MAY NOT BE AWARE (OR I MAY FORGET TO TELL HER) HOW TO ADJUST THE CAR. SAME WITH ANYONE ELSE WHO MIGHT DRIVE THE CAR.

p) **Date of Complaint**: June 12, 2019
   **NHTSA ID Number:** 11219407
   START/STOP SYSTEM HAS NEARLY CAUSED TWO MAJOR ACCIDENTS FOR ME. TURNING LEFT AT AN INTERSECTION WITH APPROACHING TRAFFIC AND PLENTY OF TIME UNDER NORMAL CIRCUMSTANCES TO PROCEED......PUSH ACCELERATOR AND 2 TO 3 SECOND HESITATION (TURBO LAG). CAR DOES NOT MOVE. THERE IS NO WAY TO PERMANENTLY DISABLE THIS DEFECTIVE SYSTEM IN THE AUDI Q8.

q) **Date of Complaint**: June 12, 2019
   **NHTSA ID Number:** 11219427
   EXCESSIVE AND DANGEROUS DELAY IN THROTTLE RESPONSE DUE TO
   AUTO START/STOP SYSTEM CAUSING VEHICLE TO COAST WHEN SLOWING
   DOWN AT A YIELD SIGN OR INTERSECTION ETC BEFORE TRANSMISSION RE-
   ENGAGES. THE VEHICLE IS POWERLESS FOR SEVERAL SECONDS DESPITE
   APPLICATION OF GAS PEDAL, CAUSING ONCOMING TRAFFIC TO POTENTIAL
   COLLIDE WITH "STALLED" Q8. THIS IS A MAJOR DESIGN DEFECT IN THE
   AUTO START/STOP SYSTEM AND OCCURS EVERY TIME THE SYSTEM IS
   ACTIVE.

r) **Date of Complaint**: June 26, 2019
   **NHTSA ID Number:** 11222824
   MY GORGEOUS NEW AUDI Q8 HAS A DANGEROUS HESITATION ISSUE WHEN
   ACCELERATION FROM A FULL START WITH AUTO START/STOP ENABLED.
   THE ISSUE IS DESCRIBED THOROUGHLY IN THE ARTICLE @
   HTTPS://TECHCRUNCH.COM/2019/06/10/REVIEW-THE-STUNNING-2019-AUDI-
   Q8-HAS-A-DEAL-BREAKING-FLAW/. ACCELERATOR RESPONSE IS VERY
   INCONSISTENT SUCH THAT YOU CAN'T COUNT ON THE CAR ACCELERATING
   IN A CONSISTENT MANNER. IT EITHER HESITATES OR SURGES FORWARD.
   TURNING AUTO START/STOP DOES IMPROVE PERFORMANCE, BUT ONE
   MUST REMEMBER TO TURN IT OFF EVERY TIME YOU START THE VEHICLE. I
   GOT MY Q8 2 MONTHS AGO. I TRIED TO LEARN HOW TO PREDICT
   ACCELERATION FROM A STANDSTILL, BUT GAVE UP AFTER ALMOST
   GETTING INTO AN ACCIDENT WHILE CHANGING LANES AROUND A CAR AT
   A RED LIGHT. I TOOK IT TO THE DEALER WHO SAYS AUDI HAS NOT ISSUED
   ANY SERVICE BULLETINS TO RESOLVE THIS ISSUE AND THE PROBLEM WAS
   NOT HAPPENING AT THE TIME OF THIS TEST DRIVE.

s) **Date of Complaint**: August 27, 2019
   **NHTSA ID Number:** 11251883
   THERE CAN BE A PROFOUND LAG IN ACCELERATION AT CRITICAL TIMES. I
   CAN COME TO AN INTERSECTION AND SLOW. WHEN THE GAP IS SAFE TO
   TURN WITH TRAFFIC OR ACROSS TRAFFIC THE CAR WILL NOT PICK UP AND
   GO. IT WILL LAG AND NOT ACCELERATE. I WILL COAST INTO THE
   INTERSECTION AND I FEEL AS IF I COULD BE BROADSIDED. THE LAG IS
   ABOUT 3-4 SECONDS. NOTHING....JUST A DEAD ROLL. IT WILL PICK UP AND
   ACCELERATE AT 3-4 SECONDS. I FEEL THAT THE GAP I WAITED FOR WAS
   TYPICALLY SAFE FOR OTHER VEHICLES I HAVE DRIVEN. IT IS NOT TURBO
   LAG....I OWN PLENTY OF DIESELS. IT IS DANGEROUS. IT CAN'T BE
   PREDICTED. IT CANNOT BE PREDICTED. THIS NEEDS TO BE INVESTIGATED
   BY YOU. AUDI SAYS THAT THE PROBLEM DOES NOT EXIST. THEY ARE
   UNABLE TO REPLICATE. THEY STATE THE VEHICLE OPERATES AS
   DESIGNED. BUT IT KEEPS HAPPENING AND CANNOT BE PREDICTED.

t) **Date of Complaint**: August 28, 2019

**NHTSA ID Number:** 11251899
THERE IS A NOTICEABLE THROTTLE LAG (HESITATION) WHEN THE AUTO
START/STOP FEATURE IS ENABLED, AND THE CAR COMES OUT OF A
ROLLING STOP (EX. WHEN MAKING A LEFT TURN). DISABLING THE AUTO
START/STOP FEATURE OR SELECTING SPORT MODE NEGATES THE ISSUE.

u)  **Date of Complaint**: September 2, 2019
**NHTSA ID Number:** 11252778
DANGEROUS LAG/PAUSE IN THROTTLE RESPONSE WHEN ACCELERATION IS
NEEDED. WHEN COMING TO A ROLLING OR ALMOST COMPLETE STOP, THE
AUTO START/STOP SYSTEM IS ENABLED. IF I GO TO TURN/ACCELERATE
THERE CAN BE SEVERAL SECONDS OF TIME LAG BETWEEN PRESSING ON
THE ACCELERATOR AND ANY THROTTLE RESPONSE. IT IS DANGEROUS AT
TIMES WHEN PULLING ONTO A STREET AND THE CAR WILL NOT RESPOND
AFTER A FEW SECONDS. ADDITIONAL THROTTLE PRESSURE DOES NOT
INDUCE A THROTTLE RESPONSE, AND SUDDENLY THE CAR WILL SURGE
AHEAD. THIS IS NOT AN ISOLATED INCIDENT AND AND SEEMS RELATED TO
TRANSMISSION PROGRAMMING WHEN THE AUTO STOP/START SYSTEM IS
ENGAGED, WHICH IT IS BY DEFAULT. THE DEALER SAYS THE CAR IS
WORKING AS DESIGNED. THIS IS DANGEROUS WHEN MAKING CROSS-
TRAFFIC LEFT TURNS BECAUSE OF THE UNPREDICTABLE DELAY.

v)  **Date of Complaint**: September 18, 2019
**NHTSA ID Number:** 11256553
THERE IS A SIGNIFICANT LAG IN THE POWER TRAIN OF THE Q8 AFTER
BREAKING TO A COASTING SPEED AND THEN ATTEMPTING TO
ACCELERATE AGAIN. THE GAS PEDAL IS COMPLETELY UNRESPONSIVE FOR
3-4 SECONDS DURING THIS TIME. THIS POSES A MAJOR SAFETY HAZARD IN
SITUATIONS WHERE YOU ARE COASTING WITH THE EXPECTATION TO
CROSS ONCOMING TRAFFIC. I HAVE EXPERIENCED THE ISSUE IN COMFORT
MODE. SIMPLY APPLY THE BREAK IN ORDER TO SLOW THE VEHICLE DOWN
WITHOUT COMPLETELY STOPPING. WHEN YOU ATTEMPT TO ACCELERATE,
THE GAS PEDAL DOES NOTHING. AFTER THE LAG PERIOD, THE VEHICLE
BEGINS TO ACCELERATE. I HAVE NOT BEEN ABLE TO REPRODUCE THIS
PROBLEM IF I COME TO A COMPLETE STOP AND THEN PROCEED. I RAISED
THIS AS A CONCERN TO MY LOCAL AUDI DEALER BUT WAS ADVISED THAT
THERE ARE NO SERVICE BULLETINS REGARDING THIS PROBLEM. MY
SOFTWARE WAS UPDATED TO THE LATEST VERSION DURING A RECENT
SERVICE APPOINTMENT, HOWEVER, THE PROBLEM PERSISTS.

w)  **Date of Complaint**: October 3, 2019
**NHTSA ID Number:** 11266013
THERE IS A HUGE (SEVERAL SECONDS) AND DANGEROUS LAG WHEN THE
CAR SLOWS DOWN TO THE POINT THE START/STOP SYSTEM KICKS IN (AND
STOPS THE ENGINE) AND ACCELERATION IS IMMEDIATELY NEEDED (E.G.
THE CARD DOES NOT COME TO A COMPLETE STOP.) IN THAT SITUATION,

PRESSING THE ACCELERATOR WILL RESULT IN THE ENGINE STARTING AGAIN IMMEDIATELY (AS IT IS SUPPOSED TO) BUT THE CARD WILL NOT ACCELERATE AT ALL NO EFFECT FOR UP TO 3 SECONDS AND THEN IT WILL SUDDENLY START MOVING TOO FAST WITH A JOLT (DEPENDING ON HOW HARD YOU WERE PRESSING THE ACCELERATOR) THIS SITUATION HAPPENS VERY FREQUENTLY (DAILY FOR ME), INCLUDING IN THE CONTEXT OF LEFT TURNS WHERE CARS ARE COMING IN THE OPPOSITE DIRECTION, MAKING IT A SEVERE SECURITY ISSUE. THIS PROBLEM IS NOT CAUSED BY TURBO LAG. IT IS MOST LIKELY CAUSED BY THE SOFTWARE FAILING TO DOWNSHIFT BECAUSE IT BELIEVES THE CAR IS COASTING. THIS ISSUE IS NOT ISOLATED AND HAS BEEN REPORTED BY PLENTY OF OTHER AUDI Q8 USERS. THERE IS A LONG THREAD ONLINE DISCUSSING IT: HTTPS://WWW.AUDIWORLD.COM/FORUMS/AUDI-Q8-227/INTRO-AUTO-START-MAJOR-THROTTLE-LAG-ISSUE-2966888/PAGE2/

x) **Date of Complaint**: October 18, 2019
   **NHTSA ID Number:** 11269461
   THIS VEHICLE HAS INCONSISTENT ACCELERATION THAT IS DANGEROUS. WHEN ACCELERATING, PARTICULARLY FROM A ROLLING STOP OR SLOW SPEED BELOW 10MPH, THERE WILL BE A DELAY IN ACCELERATION. WHEN THE ENGINE DOES ENGAGE IT TAKES OFF 'LIKE A ROCKET'. IT DOES NOT ALWAYS DO THIS, WHICH MAKES IT SO DANGEROUS. HOWEVER, IT HAS BEEN HAPPENING INCONSISTENTLY FOR 9 MONTHS AND MORE THAN 20,000 MILES AND IT CONTINUES.

y) **Date of Complaint**: November 7, 2019
   **NHTSA ID Number:** 11278675
   ON NUMEROUS OCCASIONS VEHICLE ENTERS AN INTERSECTION OR CROSS TRAFFIC WHILE STARTING A TURN AND ACCELERATION LAGS FOR A 1-3 SECONDS. WHEN APPLYING MORE AND MORE GAS PEDAL, IT EVENTUALLY WILL ENGAGE ALMOST CATAPULTING YOU. HAVE COME VERY CLOSE TO GETTING HIT IN THE SIDE OF THE VEHICLE DUE TO THE LACK OF ANY RESPONSE FOR ACCELERATION. CLEARLY THERE IS A MECHANICAL FLAW IN THE WAY THE VEHICLE OPERATES AND IT LEAVES THE DRIVER AND PASSENGER AT GREAT RISK OF INJURY BECAUSE YOU CAN NOT GET OUT OF THE WAY. SEEMS AS IF THE TRANSMISSION IS NOT DOWNSHIFTING TO FIRST GEAR AND BY STAYING IN 3RD GEAR OR MORE, IT CAN NOT RESPOND TO THE ACCELERATION. IT DOES NOT DOWNSHIFT FAST ENOUGH TO ALLEVIATE THE LAG. AFTER RESEARCHING THE PROBLEM ONLINE, THIS APPEARS TO BE A KNOWN PROBLEM BY THE DRIVERS OF THIS VEHICLE BUT NO MANUFACTURER RECOGNITION OF THE SAFETY HAZARD; OBVIOUSLY TRYING TO AVOID LIABILITY. PLEASE INVESTIGATE BEFORE SOMEONE GETS INJURED (IF THEY HAVEN'T ALREADY).

z) **Date of Complaint**: November 18, 2019
   **NHTSA ID Number:** 11280948

ON MULTIPLE OCCASIONS, Q8 WILL NOT ACCELERATE WHEN GAS PEDAL
APPLIED FOR ROUGHLY 1-3 SECONDS WHEN COASTING TO A STOP OR
IMMEDIATELY COMING OUT OF A STOP, CAUSING THE VEHICLE TO REMAIN
STATIONARY ALTHOUGH GAS PEDAL IS APPLIED. ONCE THE VEHICLE
RESPONDS TO THE DEPRESSED ACCELERATOR, AFTER A DELAY, THEN THE
AUTO CAN ACCELERATE BEYOND THE REQUESTED ACCELERATION. IT
FEELS LIKE THE VEHICLE IS TRYING TO DECIDE WHETHER OR NOT TO
RESPOND TO THE DEPRESSED ACCELERATOR, LEAVING THE VEHICLE
VULNERABLE IF TRYING TO CROSS TRAFFIC, ACCELERATE FROM A STOP
SIGN, OR TURN LEFT BETWEEN ONCOMING TRAFFIC. THE PROBLEM FEELS
INTERMITTENT ALTHOUGH IT FEELS LIKE ITS BECOMING MORE COMMON.

aa) **Date of Complaint**: November 18, 2019
   **NHTSA ID Number:** 11280960
   THE CAR HAS A SEVERAL SECOND DELAY WHEN PRESSING THE GAS PEDAL
   IN THE ENGINE IDLE AUTO ON/OFF FEATURE. I HAVE NOT HEARD OF ANY
   RECALLS OR FIXES TO THIS PROBLEM. DEALER HAS NO FIX FOR PROBLEM.

bb) **Date of Complaint**: December 17, 2019
   **NHTSA ID Number:** 11289552
   THIS VEHICLE AS A SERIOUS INTERMITTENT ISSUE WITH THROTTLE LAG.
   WHEN PULLING OUT OF PARKING LOTS IF YOU DO NOT COME TO A
   COMPLETE STOP THE THROTTLE SEEMS TO LAG 1-3 SECONDS. THEN IT
   SURGES FORWARD WHEN IT FINALLY DOES MOVE. AS OTHERS HAVE SAID
   IT DOES NOT HAPPEN 100% OF THE TIME WHICH MAKES IT EVEN WORSE.
   YOU NEVER KNOW IF IT'S GOING TO GO OR WAIT A SECOND OR TWO
   BEFORE IT MOVES. BEING IN SPORT MODE DOES HELP BUT WHO CAN
   REMEMBER TO ENGAGE THAT EVERY TIME YOU START THE CAR. I HAVE
   HAD SEVERAL CLOSE CALLS DUE TO THIS ISSUE. I REFUSE TO LET MY
   DAUGHTER DRIVE THE CAR BECAUSE OF THIS ISSUE. I'VE DISCUSSED IT
   WITH THE DEALER BUT THEY HAVE NO FIX OR ACKNOWLEDGMENT OF THE
   ISSUE.

cc) **Date of Complaint**: December 18, 2019
   **NHTSA ID Number:** 11289887
   VEHICLE WILL HAVE A DELAY (1-3 SECONDS) WHEN PRESSING THE GAS
   PEDAL WHILE THE CAR IS IDLE, CAUSING A DANGEROUS SITUATION AND
   LEAVING THE VEHICLE VULNERABLE TO CROSS TRAFFIC, AS IT ROLLS
   FORWARD INTO TRAFFIC. VEHICLE THEN JOLTS FORWARD AS IT FINALLY
   ENGAGES. HAS CONTINUOUSLY HAPPENED SINCE PURCHASING THE
   VEHICLE. WE HAVE REPORTED IT ON MULTIPLE OCCASIONS TO OUR
   DEALERSHIP, YET THEY BASICALLY SAY THERE IS NOTHING THEY CAN DO
   OR GIVE US THE RUN AROUND. THEIR SOLUTION WAS TO TURN OFF THE
   AUTO STOP FEATURE, WHICH SEEMED TO WORK AT FIRST, BUT NOW THE
   VEHICLE IS EXHIBITING THE SAME PROBLEM, EVEN WITH THE AUTO STOP
   DISABLED. THINK IT HAS TO DO SOMETHING WITH THEIR NEW MILD-

HYBRID SYSTEM. IT IS NOT WORKING THE WAY IT WAS INTENDED. PLEASE LOOK INTO THIS MATTER BEFORE BEFORE A SERIOUS INJURY OCCURS.

dd) **Date of Complaint**: January 4, 2020
   **NHTSA ID Number:** 11297117
   TERRIBLE HESITATION AT STOP SIGN LEADING TO CLOSE CALL. CAR WILL NOT START OFF WITHOUT HESITATION OF 2 OR 3 SECONDS LEAVING DRIVER WITH NO CONTROL. THIS IS A VERY DANGEROUS. SEE GOOGLE COMENTS ABOUT 'Q8 PROBLEMS'

ee) **Date of Complaint**: January 11, 2020
   **NHTSA ID Number:** 11298579
   WHEN TRYING TO ACCELERATE FROM A STOP THE CAR EXHIBITS A 3-4 SECOND DELAY BEFORE ACCELERATING. THIS IS A DANGEROUS CONDITION WHEN TURNING INTO TRAFFIC OR WHEN NEEDING TO QUICKLY ACCELERATE AWAY FROM A HAZARD. IT ALSO CREATES TRAFFIC BACKUPS BY DELAYING LIGHT CHANGES FOR VEHICLE BEHIND. THE VEHICLE AS IT CURRENTLY PERFORMS IS A SAFETY RISK.

ff) **Date of Complaint**: January 26, 2020
   **NHTSA ID Number:** 11301956
   AS REPORTED BY OTHERS, IF THE CAR DOES NOT QUITE COME TO A COMPLETE STOP AND ONE ACCELERATES, THERE IS A SEVERAL SECOND DELAY AS THE ENGINE SEEMS TO BOG DOWN. THIS IS RELATED TO THE AUTO STOP/START SYSTEM AS THIS DELAY DOES NOT HAPPEN IF THE AUTO START STOP IS DISABLED.

gg) **Date of Complaint**: January 27, 2020
   **NHTSA ID Number:** 11302211
   THE VEHICLES AUTO START/STOP FEATURE PUTS THE DRIVER IN COMPROMISING SITUATIONS WHEN POWER IS DEMANDED FROM THE ACCELERATOR AFTER AN ENGINE POWER-DOWN. THE ENGINE DOES IGNITE TIMELY, (AS SOON AS THE BRAKE PEDAL IS RELEASED) BUT THE DELIVERY OF MOVING POWER IS DELAYED (LAG PERIOD) FOLLOWING AN AUTO "SHUT-OFF AND LEAVES THE VEHICLE IN COMPROMISING SITUATIONS WHERE NO POWER CAN BE DEMANDED FROM THE DRIVETRAIN. WHEN THIS DELAY PERIOD (LAG) HAS PASSED, AND POWER IS FINALLY TRANSFERRED TO THE WHEELS, THE VEHICLE EXPELS THE DEMANDED ENERGY FORCEFULLY, JERKING YOU FORWARD. I FIND THIS TO BE A SAFETY CONCERN PARTICULARLY FOR LEFT HAND (YIELD) TURNS WHERE ACCELERATOR RESPONSIVENESS IS CRITICAL BOTH THE PASSENGERS OF THE VEHICLE AND ONCOMING TRAFFIC. AUDI DEALERSHIP CHECKED OPEN CAMPAIGNS, RECALLS BUT "CANNOT REPLICATE" CUSTOMERS CONCERN. THEY DID HOWEVER, TRAIN ME ON HOW TO "DISENGAGE" THE AUTO START/STOP FEATURE, BUT THIS NEEDS TO BE DONE AT EVERY STARTUP. (IF THERE IS NO PROBLEM, WHY

DISENGAGE IT?) AUDI EXPERIENCE CENTER (1-800-822-2834) SAYS THEY RELY ON THE JUDGMENT OF THEIR SERVICE CENTERS AND CANNOT PROVIDE FURTHER GUIDANCE.

hh) **Date of Complaint**: January 27, 2020
**NHTSA ID Number:** 11302224
AUTO START/STOP FEATURE KILLS ENGINE PRIOR TO VEHICLE BEING COMPLETELY STOPPED RESULTING IN THE DRIVER NOT APPLYING ENOUGH BRAKE "FORCE" TO KEEP THE VEHICLE STATIONARY AFTER THE ENGINE'S RE-IGNITION. WHEN THE ENGINE SUBSEQUENTLY STARTS, THE THE VEHICLE IS JERKED FORWARD AND THE DRIVER NEEDS TO RE-APPLY ADDITIONAL BRAKE FORCE TO THE PEDAL IN ORDER TO KEEP THE VEHICLE STATIONARY. THIS IS A SAFETY CONCERN AS THE DRIVER IS MISLEAD TO HAVE "COMPLETE CONTROL" OF THE VEHICLE WHEN BRINING IT STATIONARY THE FIRST TIME, THEN SUBSEQUENTLY HAVING TO RELY ON "QUICK REFLEXES" TO COUNTERACT VEHICLE BEHAVIOR TO AVOID COLLISION (FROM THE VEHICLE IN FRONT OF YOU, OR FROM INTERSECTING TRAFFIC). AUDIO DEALERSHIP PERFORMED SEARCH OF OPEN CAMPAIGNS & RECALLS. NONE CURRENTLY AVAILABLE FOR THIS MODEL. SERVICE CENTER PAPERWORK INDICATES "COULD NOT REPLICATE CUSTOMERS CONCERN", BUT I WAS PROVIDED EXTENSIVE TRAINING ON HOW TO 'DISENGAGE' THE AUTO START/STOP FEATURE (IF THERE'S NO PROBLEM, WHY DISENGAGE IT?). AUDI CUSTOMER EXPERIENCE (1-800-822-2834) IS UNABLE TO PROVIDE ADDITIONAL GUIDANCE AND RELIES ON THEIR SERVICE CENTERS TO HAVE THE FINAL WORD IN VEHICLE ISSUE RESOLUTION.

ii) **Date of Complaint**: January 29, 2020
**NHTSA ID Number:** 11302799
SERIOUS SAFETY ISSUE WITH THROTTLE DELAY FROM DEAD STOP TO GET GOING; DOES NOT HAPPEN ALL THE TIME AND IT IS IMPOSSIBLE TO REPLICATE THE ISSUE; AUDI CLAIMS THEY DO NOT KNOW ANYTHING ABOUT THIS - MULTIPLE PAST COMPLAINTS. I WOULD NOT PURCHASE THIS VEHICLE UNTIL THIS IS RESOLVED. IT WILL KILL SOMEONE.

jj) **Date of Complaint**: February 25, 2020
**NHTSA ID Number:** 11311404
THERE IS A SIGNIFICANT LAG IN THE POWER TRAIN OF THE AUDI Q8 AFTER BREAKING TO A COASTING SPEED AND THEN ATTEMPTING TO ACCELERATE AGAIN. THE GAS PEDAL IS COMPLETELY UNRESPONSIVE FOR 2-3 SECONDS DURING THIS TIME. DANGEROUS DELAY IN THROTTLE RESPONSE DUE TO AUTO START/STOP OR MILD-HYBRYD SYSTEMS AND CAUSING VEHICLE TO COAST WHEN SLOWING DOWN AT A YIELD SIGN OR INTERSECTION ETC BEFORE TRANSMISSION RE-ENGAGES. THE VEHICLE IS POWERLESS FOR SEVERAL SECONDS DESPITE APPLICATION OF GAS PEDAL, CAUSING ONCOMING TRAFFIC TO POTENTIAL COLLIDE. ALREADY

REPORTED TO AUDI SERVICE BUT THEY SAID IT'S NORMAL, WHICH I
TOTALLY DISAGREE

kk) **Date of Complaint**: February 26, 2020
**NHTSA ID Number:** 11311677
AUTO START/STOP IS TURNING OFF THE ENGINE AND PUTTING THE CAR IN
NEUTRAL BEFORE THE VEHICLE IS COMPLETELY STOPPED. IF YOU NEED TO
ACCELERATE SUDDENLY TO CLEAR AN INTERSECTION, IT TAKES A FEW
SECONDS FOR IT TO START BACK UP AND MOVE THE VEHICLE. LIKE MOST
PEOPLE DO, THE THROTTLE GETS PRESSED HARDER IN THE HOPES OF THE
VEHICLE MOVING. BY THE TIME THE VEHICLE STARTS BACK UP I'M 3/4 TO
THE FLOOR WITH THE THROTTLE WHICH CAUSES THE VEHICLE TO TAKE
OFF LIKE A ROCKET. THIS IS OVERLY AGGRESSIVE START STOP IS
DANGEROUS. IT SHOULD OPERATE LIKE OTHER SYSTEMS AND NOT SHUT
OFF THE ENGINE UNTIL IT IS AT A COMPLETE STOP. I HAVE TAKEN MY
CONCERNS TO MY LOCAL DEALER AND THEY TELL ME THAT IT IS
OPERATING AS DESIGNED.

ll) **Date of Complaint**: March 2, 2020
**NHTSA ID Number:** 11315572
THROTTLE LAG FROM A NEAR (BUT NOT FULL) STOP. IF COMING TO
ROLLING STOP, FROM 1-8 MPH, AND THEN HIT ACCELERATOR, THE CAR
ENGINE REVS BUT NO ACCELERATION TO VEHICLE. AFTER A 2-3 SECOND
DELAY, CAR WILL LUNGE AND ACCELERATE NORMALLY. SCARY WHEN
NEED TO ACCELERATE FROM A NEAR ROLLING STOP. LEFT HAND TURNS
ESPECIALLY DANGEROUS. EXPLAINED ISSUE TO DEALER, AND Q8 CAR
FORUMS HAVE SAME ISSUE. DEALER SAYS FUNCTIONING "NORMAL",
WHICH I DISAGREE IT IS NOT. I HAVE TRIED ALL SETTINGS FOR
START/STOP, TRANSMISSION SETTINGS, ETC., AND NOTHING FULLY
ALLEVIATES THE PROBLEM. THIS IS NOT EPISODIC AND A CONSISTENT,
REPRODUCIBLE DANGEROUS ISSUE.

mm)     **Date of Complaint**: March 3, 2020
**NHTSA ID Number:** 11315940
THE VEHICLE HAS MAJOR THROTTLE LAG FROM A STOP STATE OF THE
CAR, IF YOU ARE NOT AWARE, THE VEHICLE WILL LAG ON ACCELERATION
AND SUDDEN JERK FORWARD AT FULL SPEED WHICH IS A MAJOR SAFETY
HAZARD IF YOU ARE NOT PAYING ATTENTION. THE TURBOS TAKE TOO
LONG TO SEND POWER TO THE WHEELS AND RESULT IS SUDDEN
ACCELERATION.

nn) **Date of Complaint**: March 6, 2020
**NHTSA ID Number:** 11316645
WHEN START/STOP SYSTEM IS ENABLED, THE ENGINE WILL SHUT OFF
WHEN COASTING TO A STOP. IF YOU TRY TO ACCELERATE IT TAKES 2-3
SECONDS FOR THE CAR TO ACCELERATE. THIS IS EXTREMELY DANGEROUS

ON LEFT HAND YIELD TURNS WHERE THERE IS ONCOMING TRAFFIC. THIS PROBLEM CAN BE SOLVED BY TURNING OFF THE START/STOP SYSTEMS OR PUTTING THE TRANSMISSION INTO SPORT MODE WHICH WILL AUTOMATICALLY TURN OFF THE START/STOP SYSTEM. IN ADDITION, THE CAR DOES NOT REMEMBER YOUR SETTING WHEN THE CAR IS TURNED OFF. SO EVERYTIME YOU START THE VEHICLE YOU HAVE TO REMEMBER TO TURN OFF THE START/STOP SYSTEMS. AUDI DEALER ASKNOWLDEGED THE ISSUE AND PERFORMED UPDATE, BUT THE ISSUE STILL PERSISTS.

oo) **Date of Complaint**: March 7, 2020
**NHTSA ID Number:** 11316725
AUTO START/STOP IS SO LAGGY WHEN RE—STARTING THE ENGINE, ESPECIALLY AT LARGE CROSSINGS W HEAVY TRAFFIC OR ROUNDABOUTS. I HAD ALMOST 5 ACCIDENTS IN THE PAST YEAR BECAUSE YOU ANTICIPATE ONCOMING TRAFFIC AND FROM EXPERIENCE YOU KNOW YOU CAN EASILY TURN OR GO, AND THEN YOU JUST ROLL A BIT AND THERE IS NOTHING HAPPENING AND YOU HAVE NO CHANCE TO DO ANYTHING.

pp) **Date of Complaint**: March 9, 2020
**NHTSA ID Number:** 11317085
WHEN DRIVING IN ANY STANDARD DRIVING MODE, WHEN YOU START TO COME TO A STOP WITH AUTO S/S ENABLED (E.G. SLOW DOWN) TO LESS THAN 6MPH, THEN ACCELERATE AGAIN, THERE IS A CONSIDERABLE LAG FOR THE VEHICLE TO START ACCELERATING AGAIN (ABOUT 1-2 SECONDS). THIS IS ESPECIALLY DANGEROUS WHEN MAKING LEFT TURNS WHEN THERE IS CROSS TRAFFIC AS THE VEHICLE OFTEN DRIFTS INTO THE INTERSECTION AND YOU CAN'T QUICKLY ACCELERATE AWAY. HAVE HAD MANY CLOSE CALLS AND THE ISSUE IS EASILY REPLICABLE ON ANY 2019 Q8.

qq) **Date of Complaint**: March 13, 2020
**NHTSA ID Number:** 11317946
THE CAR WILL UNPREDICTABLY LOSE ALL POWER FOR 2-3 SECONDS. THIS HAS MORE THAN ONCE NEARLY CAUSED A FATAL ACCIDENT!!!!!!! THE MANUFACTURER IS AWARE OF THE PROBLEM BUT UNABLE OR REFUSING TO FIX IT. PLEASE SAVE LIVES TODAY AND RECALL THE CAR.

**2020 Audi Q3**

rr) **Date of Complaint**: November 3, 2019
**NHTSA ID Number:** 11277932
WHEN THE AUTO START-STOP FUNCTION ACTIVATES (TURNING THE ENGINE OFF), THE STEERING WHEEL LOCKS. THE CAR CAN CONTINUE TO ROLL WHEN YOU LET YOUR FOOT OFF THE BRAKE TO START MOVING AGAIN, BUT THE STEERING WHEEL REMAINS LOCKED NOT ALLOWING YOU TO STEER THE CAR WHEN NECESSARY. I ALMOST GOT HIT BECAUSE OF THIS AND IT IS VERY SCARY NOT TO BE ABLE TO STEER OUT OF THE WAY

WHEN NECESSARY!!! THIS IS HORRIBLE FUNCTION OF THE CAR WHICH CAN
CAUSE A LOT OF ACCIDENTS!!

ss) **Date of Complaint**: December 3, 2019
**NHTSA ID Number:** 11286753
VEHICLE MISFIRES/ STUTTERS RESULTING IN THE VEHICLE SHUTTING OFF.
DRIVER HAS TO MANUALLY RESTART CAR. THIS CAN BE HAZARDOUS
WHEN DRIVING IN TRAFFIC AS THE VEHICLE WILL SHUT OFF. NOT SURE IF
THIS IS A FUEL INJECTION ISSUE. I'VE HAD THIS HAPPEN TWICE WHILE
ASCENDING A HILL. I PICKED UP MY NEW CAR ON 10/22/2019, SINCE
11/02/2019, I'VE EXPERIENCED THIS ISSUE 5 TIMES. MY VEHICLE HAS BEEN
IN THE REPAIR SHOP TWICE FOR THIS ISSUE AND CONTINUOUSLY SINCE
11/25/2019. THE CAR IS NOT STORING ANY FAULTS.

VEHICLE ALSO RECOGNIZES ROAD REPAIR SEALANT AS A TRAFFIC LANE
AND WILL TAKE CONTROL OF THE STEERING. YOU HAVE TO WRESTLE
WITH THE STEERING WHEEL TO COMMAND CONTROL OF THE STEERING.

LASTLY, WHEN USING THESE AUTO START/STOP FUNCTION, AFTER
RELEASING THE BRAKE THE STEERING LOCKS AND YOU HAVE TO
WRESTLE FOR CONTROL OF THE WHEEL.

tt) **Date of Complaint**: January 21, 2020
**NHTSA ID Number:** 11300896
I BOUGHT MY AUDI Q3 ON DECEMBER 21 AND ON DECEMBER 22 I STARTED
NOTICING ISSUES WITH THE STEERING, SPECIFICALLY RELATED TO THE
AUTO STOP/START FUNCTION. NOW, AS DETAILED BELOW, I DID NOT HAVE
A POSITIVE EXPERIENCE WITH MY PURCHASE OF THE VEHICLE, SO WHEN I
STARTED TO NOTICE THE SLOW BELABORED TURNING, I THOUGHT THAT I
WAS MAKING MORE OUT OF IT BECAUSE I HAD SUCH A NEGATIVE
EXPERIENCE AT THE DEALERSHIP. AND, I WISH THAT'S WHAT IT WAS.

AS I CONTINUED TO DRIVE THE VEHICLE MORE, THE PROBLEM WITH THE
STEERING WHEEL LOCKING UP NOT ONLY BECAME MORE FREQUENT, BUT
ALSO MORE AGGRESSIVE, WHERE IT WENT FROM A SHORT SPLIT-SECOND
DELAY TO A DELAYS THAT LASTED MANY SECONDS. THIS IS HIGHLY
DANGEROUS AND TERRIFYING. THE LAST TIME IT HAPPENED WAS IN THE
MIDDLE OF AN INTERSECTION WHERE I WAS TRYING TO TURN LEFT, AND
THE VEHICLE WAS MOVING FORWARD BUT THE STEERING WHEEL WASN'T
ENGAGING - THIS OCCURRED AS TRAFFIC WAS COMING TOWARDS ME, ONE
OF WHICH HAD TO SWERVE TO MISS SLAMMING INTO ME IN THE
INTERSECTION.

OBVIOUSLY, MY NEXT STEP WAS TO BRING THE CAR INTO THE
DEALERSHIP TO FIX THE CLEAR DEFECT. SO YOU CAN IMAGINE MY
SURPRISE, HORROR, AND DISMAY, WHEN DAYS LATER I RECEIVED A CALL

FROM THE SERVICE DEPARTMENT TELLING ME THAT NOT ONLY DID AUDI KNOW ABOUT THE DEFECT, BUT THAT TO THEM IT WASN'T A DEFECT AT ALL BUT AN ADEQUATELY PERFORMING "SLIGHT DELAY." OF ALL THE RESPONSES THAT I COULD HAVE IMAGINED, THAT WAS THE ONE THAT NEVER CROSSED MY MIND BECAUSE THAT WOULD ME THAT AUDI WAS WILLFULLY IGNORING THE SAFETY OF THEIR CUSTOMERS. THE SERVICE REPRESENTATIVE DID HIS BEST TO SHOW ME WORK AROUNDS FOR THE PROBLEM, BUT AS I SAID TO HIM, STEERING YOUR CAR WHILE DRIVING IS NOT SOMETHING THAT SHOULD HAVE TO BE "WORKED AROUND." THERE SHOULDN'T NEED TO BE A WORK AROUND WHERE SAFETY IS CONCERNED. THE UNSAFE DELAY HAS CONTINUED TO OCCUR.

uu) **Date of Complaint**: February 3, 2020
**NHTSA ID Number:** 11306882
I PURCHASED MY 2020 Q3 ON DEC 31 2019. WITHIN 2 WEEKS MY CAR STOPPED AT THE SIGNAL LIGHT WITH A MALFUNCTION OF AUTO STOP/START ISSUE AND WOULD NOT MOVE FORWARD. I HAD TAKEN TO THE DEALER AND THEY MENTIONED THAT THIS IS A KNOWN ISSUE WITH 2020 Q3 AND THE SOFTWARE TO FIX THE AUTO STOP/START FUNCTION WILL NOT BE AVAILABLE UNTILL END OF 1ST QUARTER. NOW I AM SEEING THE GAS CONSUMPTION HIGH AND THE VEHICLE DOES NOT DRIVE AS BEFORE.

vv) **Date of Complaint**: February 9, 2020
**NHTSA ID Number:** 11308010
MY 2020 Q3 PURCHASED DECEMBER 21, 2019 MALFUNCTIONED IN THE MIDDLE OF AN INTERSECTION JANUARY 22, 2020. IT HAD 1400 MILES ON IT. THE STEERING WHEEL LOCKED AND I HAD NO ENGINE. I COULD NOT TURN THE STEERING WHEEL AND IT SHUT OFF THE BRAKE LIGHTS, WHICH LEFT ME IN A SERIOUSLY UNSAFE SITUATION. THIS WAS THE THIRD TIME IT HAPPENED. THE OTHER TWO INSTANCES HAPPENED IN A PARKING LOT. I THOUGHT I HAD DONE SOMETHING WRONG WITH THE START/STOP. MY DEALERSHIP HAS DISMISSED MY SAFETY CONCERNS AND HAVE OFFERED NO RESOLUTION TO THE PROBLEM, OTHER THAN DISENGAGE THE START/STOP EVERY TIME I GET IN THE VEHICLE. THERE WAS NO GUARANTEE OF WHEN THIS WOULD BE FIXED AND WAS TOLD IT COULD BE MONTHS TO GET THE PARTS. THERE WAS ALSO NO GUARANTEE THAT THIS WOULDN'T HAPPEN WITH THE START/STOP ALREADY DISENGAGED. I AM DRIVING A VEHICLE THAT COULD POTENTIALLY SHUT DOWN WITHOUT WARNING LEAVING MY LIFE AND THE LIVES OF OTHERS AT RISK.

ww)      **Date of Complaint**: February 18, 2020
**NHTSA ID Number:** 11309844
WHILE DRIVING MY 2 MONTH OLD AUDI Q3 THIS MORNING THE CAR COMPLETELY STALLED WHILE GOING APPROXIMATELY 40 MPH. I RECEIVED AN ERROR MESSAGE, DRIVE LINE MALFUNCTION. THE CAR

WOULD NOT RESPOND AT ALL AFTER APPLYING THE ACCELERATOR. I WAS ALMOST HIT BY 2 TRUCKS!!! I THEN PUT THE CAR IN PARK AND IT WAS ABLE TO START IT UP. I BROUGHT IT TO THE DEALER, THEY JUST CALLED ME AND TOLD ME THEY FOUND AN ERROR CODE P060C00 INDICATING AN INTERNAL CONTROL MODULE PROBLEM. THEY SAID THAT THERE IS NO KNOWN FIX AT THIS TIME BUT THEY SAID THAT THERE IS A KNOWN SERVICE BULLETIN ON THIS ISSUE. THEY SAID THAT I NEED TO DISABLE THE AUTO START STOP FEATURE ON THIS CAR EACH TIME I START IT UP.

WHAT DO I DO NOW? MY WIFE WILL NOT DRIVE THIS CAR ANYMORE AND DOES NOT WANT ME TO DRIVE IT EITHER! THIS IS NOT A SAFE CAR TO DRIVE. PLEASE HELP!

xx) **Date of Complaint**: February 25, 2020
  **NHTSA ID Number:** 11311430
  THE VEHICLE STALLS FOR NO REASON WHILE BEING DRIVEN. AUDI HAS ADVISED US THAT THEY DO NOT HAVE A FIX FOR THE PROBLEM. APPARENTLY IT IS A SOFTWARE ISSUE BUT THE SOFTWARE IS NOT AVAILABLE YET. MY WIFE WAS DRIVING DOWN THE ROAD YESTERDAY AND THE CAR SUDDENLY STALLED. THE VEHICLE WAS IN THE SHOP FOR 5 WEEKS WHEN IT WAS FIRST PURCHASED DUE TO MULTIPLE ELECTRIC MALFUNCTIONS.

yy) **Date of Complaint**: March 2, 2020
  **NHTSA ID Number:** 11315575
  AUTO STOP/START SYSTEM LAGS, CAUSING STEERING WHEEL TO LOCK UP, PREVENTING A TURN THROUGH AN INTERSECTION, OR INTO A SHOPPING AREA! THIS OCCURRED AS I WAS ATTEMPTING A TURN, FROM A COMPLETE STOP, INTO A STRIP SHOPPING CENTER, IN THE BALTIMORE AREA.

zz) **Date of Complaint**: March 12, 2020
  **NHTSA ID Number:** 11317773
  THERE IS A 3-4 SECOND DELAY IN THE STEERING ASSIST AFTER ENGINE RESTARTS FROM A START/STOP EVENT. (AUTO START/STOP FEATURE)

  I ALMOST GOT INTO AN ACCIDENT BECAUSE I EXPECTED THE POWER STEERING TO BE ACTIVE WHILE THE CAR IS ON.

  I ATTEMPTED TO MAKE A RIGHT HAND TURN ON A TRAFFIC LIGHT, WHEN I LET GO OF THE BRAKE, THE ENGINE STARTED AND CAR STARTED MOVING FORWARD. I WAS UNABLE TO TURN MY STEERING WHEEL SO THE CAR WENT FORWARD AND I ALMOST HIT THE CAR IN THE NEXT LANE OVER. AFTER TAKING IT TO THE DEALERSHIP, THEY SAID THAT AUDI KNEW ABOUT THIS AND STATED THAT THIS IS WITHIN SPECIFICATION. (ATTACHED THEIR INTERNAL TECHNICAL SERVICE BULLETIN ABOUT THIS PARTICULAR ISSUE)

MEANWHILE MY CAR WAS IN THE SHOP FOR A WEEK, I HAD A LOANER AUDI SQ5 THAT DID NOT HAVE THIS PROBLEM. NOR ANY OF THE CARS I'VE EVER DRIVEN BEFORE. I EVEN SHOWED THIS ISSUE TO A FEW OF MY FRIENDS AND EVEN THEY AGREED THAT THIS WAS NOT SAFE.

WHAT'S EVEN MORE UPSETTING IS THAT AUDI'S RESPONSE WAS "AUDI TECHNICAL ASSISTANCE RECOMMENDS TURNING OFF START/STOP SYSTEM TO AVOID STEERING CONCERN"

SO WHY WOULD I PAY FOR A FEATURE THAT I AM NOT ABLE TO USE AND IF I DO USE THE FEATURE, I'M ENDANGERING MYSELF AS WELL AS OTHERS ON THE ROAD?

aaa)    **Date of Complaint**: June 3, 2020
    **NHTSA ID Number:** 11327179
    I ALSO NOTICE THAT WHEN STOPPED AND THE AUTO STOP ENGAGES THE STEERING WHEEL LOCKS MAKING IT DIFFICULT TO TURN A CORNER FROM A RED LIGHT.

bbb)    **Date of Complaint**: June 17, 2020
    **NHTSA ID Number:** 11329439
    WHILE SITTING AT A LIGHT OR STOPPED, THE ENGINE SURGES/JUMPS THE CAR FORWARD. YOU NEED TO LEAVE MORE SPACE TO NOT HIT THE CAR IN FRONT OF YOU. THIS OCCURS IN BOTH CASES (EMISSIONS MODE AND NON EMISSIONS MODE).

ccc)    **Date of Complaint**: June 22, 2020
    **NHTSA ID Number:** 11330119
    WE WERE SITTING ON A FREEWAY OFF RAMP AT A STOP. WHEN STARTING TO MOVE FROM A STOP, THE CAR SHUDDERED AND THE CONSOLE LIT UP AND WE WERE UNABLE TO MOVE FASTER THAN 5 MILES AN HOUR TO PULL OVER TO THE SIDE OF THE ROAD. IT WAS A MIRACLE WE WERE NOT REAR ENDED. WE HAD THE CAR TOWED TO THE DEALER AND HAVE BEEN TOLD THIS IS RELATED TO THE START/STOP FUNCTION AND IS A SOFTWARE PROBLEM THAT AUDI DOES NOT YET HAVE A FIX FOR. IT IS INCREDIBLY DANGEROUS AND I REFUSE TO DRIVE THE CAR. THE CAR IS SITTING AT THE DEALER WHO TO DATE HAS DONE NOTHING. THERE HAVE BEEN PROBLEMS WITH THE START/STOP FUNCTION PRIOR TO THIS WHERE WHEN YOU ARE TRYING TO MOVE FORWARD FROM A STOP, THE STEERING WHEEL WOULD LOCK UP AND YOU COULD NOT STEER FOR A FEW MINUTES UNTIL THE CAR WOULD START TO MOVE. IT IS ONLY A MATTER OF TIME BEFORE SOMEONE IS SERIOUSLY INJURED OR KILLED DUE TO THIS PROBLEM.

ddd)    **Date of Complaint**: July 13, 2020
    **NHTSA ID Number:** 11338999

THERES NO WARNING OR ANY INDICATORS THAT COME UP PRIOR TO THE CAR COMPLETING DYING IN THE ROAD. I TOOK THE CAR TO THE DEALERSHIP AND WAS TOLD THERES SOFTWARE ISSUES BUT NOTHING THEY CAN DO FOR IT UNTIL AN UPDATE COMES OUT. I WAS TOLD TO TURN OFF THE AUTO SHUT OFF FEATURE AND IT WILL WORK OK, BUT THAT HAS NOT HELPED. THE VEHICLE IS UNSAFE TO DRIVE BECAUSE IT COULD COMPLETELY FAIL AT ANY GIVEN MOMENT WITHOUT NOTICE. AFTER FURTHER RESEARCH THIS IS A KNOWN ISSUE WITH 2020'S. IT HAS BEEN GOING ON FOR THE PAST MONTH 1/2

**2020 Audi Q5**

   eee)      **Date of Complaint**: April 27, 2020
         **NHTSA ID Number:** 11322405
         OVERALL PROBLEM:

         AUDI Q5 2020 APPEARS TO HAVE A COMPUTER MALFUNCTION THAT INSTANTLY DISABLES ALL SYSTEMS. VEHICLE "SHUT ITSELF OFF" AT A BRIEF STOP AND BECAME VERY DIFFICULT TO CONTROL, ROLLING INTO INTERSECTION.

         DETAILS:

         I STOPPED CAR AT RESIDENTIAL NEIGHBORHOOD STOP SIGN (BRIEF AND COMPLETE STOP, NO WAIT), IMMEDIATELY READY TO PROCEED FORWARD. AUDI'S "AUTO STOP/START" FEATURE SHUT OFF THE ENGINE, THEN IMMEDIATELY ALL ELECTRONICS SHUT DOWN. THE CAR BASICALLY "TURNED ITSELF OFF."

         VEHICLE THEN BEGAN DRIFTING/COASTING INTO INTERSECTION. CONTROLS WERE UNRESPONSIVE. I REALIZED THE POWER BRAKES AND POWER STEERING WERE DISABLED. I BRAKED VERY HARD, WHICH STOPPED THE CAR. HAD TO KEEP BRAKES PRESSED VERY HARD TO KEEP CAR FROM MOVING. IGNITION BUTTON WAS UNRESPONSIVE.

         I THEN NOTICED A SMALL MESSAGE ON THE DASHBOARD CONTROLS WHICH READ SOMETHING LIKE "START/STOP IGNITION SYSTEM DISABLED — PUT CAR IN P." (THIS WAS THE ONLY WORKING ELECTRICAL FEATURE I NOTICED, THE EVENT WAS FRIGHTENING AND DISORIENTING, BUT I'M FAIRLY SURE NOTHING ELSE WAS FUNCTIONING). I THEN SHIFTED GEARSHIFT TO PARK, AND WAS ABLE TO START THE CAR AND DRIVE AWAY.

         I REPORTED PROBLEM TO DEALER. DEALER CLAIMED TO INSPECT VEHICLE, AND SAID THEY WERE UNABLE TO FIND ANYTHING WRONG. DEALER SAID VEHICLE'S COMPUTER HAD NO RECORD/MEMORY OF THE INCIDENT. DEALER ALSO SEEMED RESISTANT TO PROPERLY

DOCUMENTING THE INCIDENT ON THEIR PAPERWORK.

I REPORTED THE PROBLEM TO AUDI CORPORATE IN AUBURN HILLS MI, EXPLAINING I NO LONGER FELT SAFE DRIVING THIS CAR, AND WOULD NOT DRIVE IT AGAIN. AUDI CLAIMED TO PERFORM THEIR OWN INVESTIGATION, AND THEIR BRIEF REPLY SAID THAT THEY WERE NOT OBLIGATED TO DO ANYTHING UNDER APPLICABLE LEMON LAWS.

CAR WAS IN 3RD MONTH OF LEASE, ~150 MILES. PREVIOUSLY I DROVE AN AUDI A4 2017 FOR 3 YEARS SO I WAS/AM VERY FAMILIAR WITH THE WAY AUDIS OPERATE.

52.     Audi is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Audi conducts tests, including pre-sale durability testing, on incoming components, including the Start/Stop System, to verify the parts are free from defect and align with Audi's specifications.[9] Thus, Audi knew or should have known the Start/Stop System was defective and prone to put drivers in dangerous situations due to the inherent risk of the Start/Stop System Defect failing and causing the Class Vehicles to become inoperative for several seconds following a full or rolling stop, frequently stranding Vehicles in the middle of intersections, while accelerating from a traffic stop, or while accelerating from a stop on busy freeways and highways.

53.     Additionally, Defendants should have learned of this widespread Defect from the sheer number of reports received from dealerships. On information and belief, Defendants' customer relations department, which interacts with individual dealerships to identify potential common defects, received numerous reports regarding the Start/Stop System Defect, which led to the release of the aforementioned TSBs.

54.     On information and belief, Audi's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

---

[9]     Akweli     Parker,     *How     Car     Testing     Works*,     HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last visited Aug. 3, 2020).

55.     Defendants' warranty department similarly analyzes and collects data submitted by their dealerships to identify warranty trends in their vehicles. On further information and belief, when a repair is made under warranty, the dealership must provide Audi with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendants, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

56.     The existence of the Start/Stop Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. No consumer would have reason to search for the Start/Stop Defect in any publicly available resources unless specifically advised to do so, which they are not. Nor should they, as they reasonably rely on Defendants to either disclose the Defect, or sell a Vehicle without the Defect, as Audi is obligated to do by law, and more generally, to live up to the promises made consistently throughout its advertising materials. Further, even if consumers had searched for problems with the Start/Stop System, Audi itself has never publicly or affirmatively disclosed the Defect. Instead, Audi has repeatedly told consumers that there was no Defect or that it was unable to duplicate the Defect. Had Plaintiff and other Class Members known of the Start/Stop System Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

57.     Reasonable consumers, like Plaintiff, expect that a vehicle's Start/Stop System is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that Audi will not sell or lease vehicles with known safety defects, such as the Start/Stop System Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Audi to conceal and fail to disclose the Start/Stop System Defect to them, and to thereafter continually deny its existence.

**Audi Has Actively Concealed the Start/Stop System Defect**

58.     Despite its knowledge of the Start/Stop System Defect in the Class Vehicles, Audi actively concealed the existence and nature of the Defect from Plaintiff and Class Members. Specifically, Audi failed to disclose or actively concealed at and after the time of purchase, lease,

or repair:

    a)  any and all known material defects or material nonconformity of the Class Vehicles, including the Defect pertaining to the Start/Stop System;

    b)  that the Class Vehicles, including the Start/Stop Systems, were not in good working order, were defective, and were not fit for their intended purposes; and

    c)  that the Class Vehicles and the Start/Stop System were defective, despite the fact that Audi learned of the Defect as early as early 2016.

59.     When consumers present their Class Vehicles to authorized Audi dealers for Start/Stop System repairs, rather than repair the problem under warranty, Audi dealers either inform consumers that their Vehicles are functioning properly or conduct "repairs" that merely mask the Start/Stop System Defect, including advising consumers to manually disable the Start/Stop System each time they turn on their Vehicle.

<b>Audi Has Unjustly Retained a Substantial Benefit</b>

60.     On information and belief, Plaintiff allege that Defendants unlawfully failed to disclose the alleged Defect in order to induce them and other putative Class Members to purchase or lease the Class Vehicles with less than the full universe of information available to the Defendants about the Defect in order to extract more money from the Class Members than they would pay if the Defect was fully disclosed to them.

61.     Plaintiff further alleges that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's purchase of his Class Vehicle.

62.     Therefore, Plaintiff alleges that Defendants unlawfully induced him and the putative Class Members to purchase their respective Class Vehicles by concealing a material fact (the defective Start/Stop System) and further alleges that they would have paid less for the Class Vehicles, or not purchased them at all, had they known of the Defect.

63.     Accordingly, Defendants' ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did -- and likely will continue to – deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as Members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

65.     The Class and Sub-Classes are defined as:

> **Class**:  All persons in the United States who purchased or leased any 2017-2020 Audi vehicle equipped with Audi's "Start/Stop Efficiency System" ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Audi.

> **Florida Sub-Class**:  All Members of the Class who purchased or leased their Class Vehicles in the State of Florida.

66.     Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

67.     Numerosity:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough, well into the multiple thousands or hundreds of thousands, such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in

Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

68.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Audi. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that the Class Vehicles suffer from the Start/Stop System Defect and Class Members have incurred or will incur the cost of overpaying for the Class Vehicles. Furthermore, the factual bases of Audi's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

69.     <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

a)  Whether Class Vehicles suffer from defects relating to the Start/Stop System;

b)  Whether the defects relating to the Start/Stop System constitute an unreasonable safety risk;

c)  Whether Defendants knew about the defects pertaining to the Start/Stop System and, if so, how long Defendants have known of the defect;

d)  Whether the defective nature of the Start/Stop System constitutes a material fact;

e)  Whether Defendants have had an ongoing duty to disclose the defective nature of the Start/Stop System to Plaintiff and Class Members;

f)  Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

g)  Whether Defendants knew or reasonably should have known of the defects pertaining to the Start/Stop System before it sold and leased Class Vehicles to Class Members;

h)  Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Start/Stop System and/or its components;

i)   Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Start/Stop System and/or its components;

j)   Whether Defendants breached the implied warranty of merchantability and express warranties pursuant to the Uniform Commercial Code, Florida law, and the Magnuson-Moss Warranty Act; and

k)   Whether Defendants committed fraudulent concealment.

70.   <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

71.   <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the Class)**

72.     Plaintiff incorporates by reference all other allegations contained in the other paragraphs of this complaint.

73.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class under the Uniform Commercial Code.

74.     Audi impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

75.     This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Start/Stop Systems manufactured, supplied, distributed, and/or sold by Audi were safe and reliable luxury vehicles for providing transportation; and (ii) a warranty that the Class Vehicles and their Start/Stop Systems were fit for their intended use while the Class Vehicles were being operated.

76.     Because the Class Vehicles are equipped with a defective Start/Stop System, the Vehicles purchased or leased and used by Plaintiff and the Class are unsafe, unfit for their ordinary use when sold, and not merchantable. Audi breached the implied warranty of merchantability, as stated in the Uniform Commercial Code, by selling or leasing Class Vehicles to Plaintiff and the Class Members.

77.     Audi knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Audi directly sold and marketed Vehicles equipped with the Start/Stop Systems to consumers through authorized dealers, like those from whom Plaintiff and Class Members bought or leased their Vehicles, for the intended purpose of consumers purchasing the Vehicles. Audi knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and Class Members, with no modification to the defective Start/Stop Systems.

78.     Contrary to the applicable implied warranties, the Class Vehicles and their Start/Stop Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of

providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their Start/Stop Systems and the existence of the Defect at the time of sale or lease and thereafter. Audi knew of this Defect at the time these sale or lease transactions occurred.

79.     As a result of Audi's breach of the applicable implied warranties, Plaintiff and the Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' Start/Stop System components are substantially certain to fail before their expected useful life has run.

80.     Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Audi's conduct described herein.

81.     Plaintiff and Class Members were not required to notify Audi of the breach because affording Audi a reasonable opportunity to cure its breach of written warranty would have been futile. Audi was also on notice of the Defect from the complaints and service requests it received from Plaintiff and Class Members, from repairs and/or replacements of the Start/Stop Systems or components thereof, and through other internal sources.

82.     As a direct and proximate cause of Audi's breach, Plaintiff and Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, as well as the diminution of value of their Class Vehicles. Additionally, Plaintiff and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

83.     Plaintiff and Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Audi's wrongful acts and practices, and any other relief to which Plaintiff and Class Members may be entitled.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Class)**

84.     Plaintiff incorporates by reference all other allegations contained in the other paragraphs of this complaint.

85.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class under the Uniform Commercial Code.

86.     Audi provided all purchasers and lessees of the Class Vehicles with the express Warranty described herein, which became a material part of the bargain.

87.     Under the Warranty, Audi expressly warranted the following: "Audi provides New Vehicle Limited Warranty coverage for your vehicle. The warranty duration is 4 years or 50,000 miles from your vehicle's in-service date, whichever occurs first, and cover defects in manufacturer's material and workmanship." Because the Defect does not fall into any excluded categories, it is covered under Audi's express Warranty.

88.     Audi manufactured and/or installed the Start/Stop Systems and its component parts in the Class Vehicles, and therefore the Start/Stop Systems and their component parts are covered by the express Warranty.

89.     The Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Plaintiff and Class Members.

90.     Plaintiff relied on Audi's express Warranty, which was a material part of the bargain when purchasing his Class Vehicle.

91.     Under the express Warranty, Audi was obligated to correct the Defect in the Vehicles owned or leased by Plaintiff and Class Members.

92.     Although Audi was obligated to correct the Defect, none of the attempted fixes to the Start/Stop Systems are adequate under the terms of the Warranty, as they did not cure the Defect.

93.     Audi breached the express Warranty by performing illusory repairs. Rather than repairing the Class Vehicles pursuant to the express Warranty, Audi falsely informed Class

Members that there was no problem with their Class Vehicles, performed ineffective procedures, including software updates, and/or replaced defective components in the Start/Stop Systems with equally defective components, without actually repairing the Class Vehicles.

94.     Audi and its agent dealers have failed and refused to conform the Start/Stop Systems to the express Warranty. Audi's conduct, as discussed throughout this complaint, has voided any attempt on its part to disclaim liability for its actions.

95.     Moreover, Audi's attempt to disclaim or limit the express Warranty vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Audi's Warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

96.     The time limits contained in Audi's Warranty period were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and the Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Audi. A gross disparity in bargaining power existed between Audi and  Class Members, and Audi knew or should have known that the Class Vehicles were defective at the time of sale.

97.     Plaintiff and Class Members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Audi's conduct described herein.

98.     Plaintiff and Class Members were not required to notify Audi of the breach because affording Audi a reasonable opportunity to cure its breach of written warranty would have been futile. Audi was also on notice of the Defect from the complaints and service requests it received from Plaintiff and the Class Members, from repairs and/or replacements of the Start/Stop Systems or components thereof, and through other internal and external sources.

99.     Because Audi has not been able to remedy the Defect, any limitation on remedies included in the Warranty causes the Warranty to fail its essential purpose, rendering it null and void.

100.    As a direct and proximate cause of Audi's breach, Plaintiff and Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, as well as the diminution of value of their Class Vehicles. Additionally, Plaintiff and Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

101.    As a direct and proximate result of Audi's breach of its express Warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Breach of Implied and Written Warranties pursuant to the Magnuson-Moss Warranty Act
15 U.S.C. § 2301 *et seq.*
(On Behalf of the Class)**

102.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    Plaintiff brings this cause of action on behalf of himself and the Class against Defendants.

104.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

105.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

106.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

107.    Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

108.    Defendants' express Warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

109.    Audi breached the implied warranty and the express Warranty by virtue of the above-described acts.

110.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

111.    Plaintiff and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so, including when Plaintiff and Class Members brought their Class Vehicles in for diagnoses and repair of the Defect. Defendants were also on notice of the Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

112.    Audi's breach of the implied warranty and express Warranty deprived Plaintiff and Class Members of the benefits of their bargains.

113.    As a direct and proximate result of Defendants' breach of the implied and express Warranty, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial. Plaintiff and Class Members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FOURTH CAUSE OF ACTION**
**Fraudulent Concealment**
**(On Behalf of the Class, or, in the Alternative, the Florida Sub-Class)**

114.    Plaintiff incorporates by reference the allegations contained in the other paragraphs of this Complaint.

115.    Audi intentionally and knowingly misrepresented material facts and concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality or grade of the Class Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiff and Members of the Class rely on Audi's misstatements and omissions. As a direct result of Audi's fraudulent conduct, Plaintiff and Members of the Class have suffered actual damages.

116.     Audi knew at the time of sale or lease and thereafter that the Vehicles contained the Defect, misrepresented the safety, reliability and ability to accelerate safely of the Class Vehicles, concealed the Defect, and never intended to repair the Defect during the Warranty periods.  To date, Audi has not provided Plaintiff and Members of the Class with a repair or remedy for the Defect.

117.     Audi owed a duty to disclose the Defect and its corresponding safety risk to Plaintiff and the Members of the Class because Audi possessed superior and exclusive knowledge regarding the Defect. Further, Audi had a duty to disclose any information relating to the safety, quality, functionality and reliability of Vehicles because they consistently marketed the Vehicles safe, reliable transportation.

118.     Moreover, once Audi made representations to the public about safety, quality, functionality, and reliability, Audi was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. Rather than disclose the Defect or its symptoms, Audi intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Vehicles and the presence of the Defect and corresponding safety risk, to sell additional Vehicles and avoid the cost of repair or replacement.

119.     The Defect is material to Plaintiff and the Members of the Class because Plaintiff and the Members of the Class had a reasonable expectation that the Vehicles would not contain a Defect that causes the Vehicles' engine to lag, hesitate, or otherwise fail to immediately engage or restart when drivers attempt to accelerate from a full or rolling stop, and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Defect as well as its associated safety risk.

120.     Plaintiff and Class Members would not have purchased or leased the Vehicles but for Audi's misrepresentations, omissions, and concealment of material facts regarding the nature

and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

121.    Audi knew its misstatements about the Vehicles' safety and reliability, as well as their concealment and suppression of the existence of the Defect was false and misleading and knew the effect of concealing those material facts. Defendants knew their misstatements, concealment, and suppression of the Defect would sell more Vehicles and would discourage Plaintiff and Class Members from seeking replacement or repair of the Defect during the applicable warranty periods. Further, Audi intended to induce Plaintiff and Class Members into purchasing or leasing the Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

122.    Audi acted with malice, oppressed the Class Members, and committed fraud upon them.

123.    Plaintiff and Class Members reasonably relied upon Audi's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Audi's misrepresentations, omissions, and active concealment of material facts regarding the Defect and the associated safety risks, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Violations of the Virginia Consumer Protection Act**
**VA. Code. Ann. Sections 59.1-196, *et seq*.**
**(On Behalf of the Class)**

124.    Plaintiff incorporates by reference the allegations contained in the other paragraphs of this Complaint.

125.    Plaintiff brings this cause of action on behalf of himself and the Class.

126.    The Virginia Consumer Protection Act prohibits:

（5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

(6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; …

(8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code ann. § 59.1-200(A).

127.    Audi is a "person" and a "supplier" as defined by Va. Code ann. § 59.1-198. Plaintiff and Class Members' purchases and leases of the Class Vehicles manufactured, sold, distributed and serviced by Audi are "consumer transactions" as defined by Va. Code ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes. During Audi's business, it willfully failed to disclose and actively concealed the Start/Stop Defect in Class Vehicles as described above. Thus, Audi engaged in acts and practices that violated Va. Code ann. § 59.1-200(A), including, but not limited to, representing that Class Vehicles had characteristics, uses, benefits, and qualities which they did not have; representing that Class Vehicles were of a particular standard and quality when they were not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

128.    Audi's actions, as set forth above, occurred in the conduct of trade or commerce.

129.    Audi's conduct proximately caused injuries to Plaintiff and the other Class Members.

130.    Plaintiff and the other Class Members were injured as a result of Audi's conduct in that Plaintiff and the other Class Members overpaid for their Class Vehicles, they did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Audi's misrepresentations and omissions.

131.    Audi actively and willfully concealed and/or suppressed the material facts regarding the defective Start/Stop System and the Class Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Class Members and to induce them to purchase or lease Class Vehicles at a higher price, which did not match the Class Vehicles' true value. Plaintiff and the

other Class Members therefore seek statutory damages, actual damages, and treble damages pursuant to Va. Code ann. § 59.1-204.

## SIXTH CAUSE OF ACTION
### For Unjust Enrichment
### (On Behalf of the Class)

132.    Plaintiff incorporates by reference the allegations contained in the other paragraphs of this Complaint.

133.    Plaintiff brings this cause of action on behalf of himself and the Class.

134.    As a direct and proximate result of Defendants' failure to disclose known defects, Defendants have profited through the sale and lease of the Class Vehicles.  Although these Vehicles are purchased through Defendants' agents, the money from the Vehicle sales flows directly back to Defendants.

135.    Additionally, as a direct and proximate result of Defendants' failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have Vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

136.    Defendants have been unjustly enriched due to the known Defect in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiff and Class Members.

137.    As a result of Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages.


## SEVENTH CAUSE OF ACTION
### Violation of Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201-.213
### (On Behalf of the Florida Sub-Class)

138.    Plaintiff incorporates by reference all other allegations contained in the other paragraphs of this complaint.

139.    Plaintiff brings this cause of action on behalf of himself and the Florida Sub-Class.

140.     Audi's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq*., Florida Statutes ("FDUTPA").

141.     At all relevant times, Plaintiff and the Florida Sub-Class Members were "consumers" within the meaning of the FDUTPA. F.S.A. § 501.203(7).

142.     Audi's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. F.S.A. § 501.203(8).

143.     The practices of Audi, described above, violate the FDUTPA for, *inter alia*, one or more of the following reasons:

a) Audi represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b) Audi provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Start/Stop Systems;

c) Audi represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d) Audi engaged in unconscionable commercial practices in failing to reveal material facts and information about the Start/Stop Systems, which did, or tended to, mislead Plaintiff and the Florida Sub-Class Members about facts that could not reasonably be known by consumers;

e) Audi failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f) Audi caused Plaintiff and Florida Sub-Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

g) Audi failed to reveal material facts to Plaintiff and the Florida Class with the intent that Plaintiff and Florida Sub-Class Members rely upon the omission;

h) Audi made material representations and statements of fact to Plaintiff and Florida Sub-Class Members that resulted in Plaintiff and Florida Sub-Class Members reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

i) Audi intended that Plaintiff and Florida Sub-Class Members rely on its misrepresentations and omissions, so that Plaintiff and Florida Sub-Class Members would purchase Vehicles equipped with the Start/Stop Systems.

144.    Audi's actions impact the public interest because Plaintiff and Florida Sub-Class Members were injured in exactly the same way as thousands of others purchasing and/or leasing the Vehicles with defective Start/Stop Systems as a result of and pursuant to Audi's generalized course of deception.

145.    Had Plaintiff and Florida Sub-Class Members known of the defective nature of the Start/Stop Systems, they would not have purchased or leased Vehicles equipped with the Start/Stop Systems or would have paid less for them.

146.    The foregoing acts, omissions and practices proximately caused Plaintiff and Florida Sub-Class Members to suffer actual damages in the form of, *inter alia*, overpaying for the Vehicles, as well as diminution in value of the Vehicles equipped with Start/Stop Systems, and they are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

### EIGHTH CAUSE OF ACTION
### Breach of Express Warranty, F.S.A. §§ 672.31, 680.21
### (On Behalf of the Florida Sub-Class)

147.    Plaintiff incorporates by reference all other allegations contained in the other paragraphs of this complaint.

148.    Plaintiff brings this cause of action on behalf of himself and the Florida Sub-Class.

149.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

150.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

151.    The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

152.    Audi provided all purchasers and lessees of the Class Vehicles with the express Warranty described herein, which became a material part of the bargain.

153.    Under the Warranty, Audi expressly warranted the following: "Audi provides New Vehicle Limited Warranty coverage for your vehicle. The warranty duration is 4 years or 50,000 miles from your vehicle's in-service date, whichever occurs first, and cover defects in manufacturer's material and workmanship." Because the Defect does not fall into any excluded categories, it is covered under Audi's express Warranty.

154.    Audi manufactured and/or installed the Start/Stop Systems and their component parts in the Class Vehicles, and the Start/Stop Systems and their component parts are covered by the express Warranty.

155.    The Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Plaintiff and Florida Sub-Class Members.

156.    Plaintiff relied on Audi's express Warranty, which was a material part of the bargain, when purchasing his Class Vehicle.

157.    Under the express Warranty, Audi was obligated to correct the Defect in the Vehicles owned or leased by Plaintiff and Florida Sub-Class Members.

158.    Although Audi was obligated to correct the Defect, none of the attempted fixes to the Start/Stop Systems are adequate under the terms of the Warranty, as they did not cure the Defect.

159.    Audi breached the express Warranty by performing illusory repairs. Rather than repairing the Vehicles pursuant to the express Warranty, Audi falsely informed Florida Sub-Class

Members that there was no problem with their Class Vehicles, performed ineffective procedures, including software updates, and/or replaced defective components in the Start/Stop Systems with equally defective components, without actually repairing the Class Vehicles.

160.    Audi and its agent dealers have failed and refused to conform the Start/Stop Systems to the express Warranty. Audi's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

161.    Moreover, Audi's attempt to disclaim or limit the express Warranty vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Audi's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

162.    The time limits contained in Audi's Warranty period were also unconscionable and inadequate to protect Plaintiff and Florida Sub-Class Members. Among other things, Plaintiff and Florida Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Audi. A gross disparity in bargaining power existed between Audi and Florida Sub-Class Members, and Audi knew or should have known that the Class Vehicles were defective at the time of sale.

163.    Plaintiff and Florida Sub-Class Members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Audi's conduct described herein.

164.    Plaintiff and Florida Sub-Class Members were not required to notify Audi of the breach because affording Audi a reasonable opportunity to cure its breach of written Warranty would have been futile. Audi was also on notice of the Defect from the complaints and service requests it received from Plaintiff and Florida Sub-Class Members, from repairs and/or replacements of the Start/Stop Systems or components thereof, and through other internal and external sources.

165.    Because Audi has not been able to remedy the Defect, any limitation on remedies included in the Warranty causes the Warranty to fail its essential purpose, rendering it null and void.

166.     As a direct and proximate cause of Audi's breach, Plaintiff and Florida Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff and Florida Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

167.     As a direct and proximate result of Audi's breach of express Warranty, Plaintiff and Florida Sub-Class Members have been damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability, F.S.A. §§ 672.314, 680.212
### (On Behalf of the Florida Sub-Class)

168.     Plaintiff incorporates by reference all other allegations contained in the other paragraphs of this complaint.

169.     Plaintiff brings this cause of action on behalf of himself and the Florida Sub-Class.

170.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

171.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

172.     The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

173.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under F.S.A. §§ 672.314 and 680.212.

174.     Audi knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Audi directly sold and marketed vehicles equipped with the Start/Stop Systems to consumers through authorized dealers, like those from whom Plaintiff and Florida Sub-Class Members bought or leased their Vehicles, for the intended purpose of consumers purchasing

the Vehicles. Audi knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff and Florida Sub-Class Members, with no modification to the defective Start/Stop Systems.

175.    Audi provided Plaintiff and Florida Sub-Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

176.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Start/Stop Systems were manufactured, supplied, distributed, and/or sold by Audi were safe and reliable luxury vehicles for providing transportation; and (ii) a warranty that the Class Vehicles and their Start/Stop Systems would be fit for their intended use while the Class Vehicles were being operated.

177.    Contrary to the applicable implied warranties, the Class Vehicles and their Start/Stop Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Florida Sub-Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their Start/Stop Systems and the existence of the Defect at the time of sale or lease and thereafter. Audi knew of this Defect at the time these sale or lease transactions occurred.

178.    As a result of Audi's breach of the applicable implied warranties, Plaintiff and Florida Sub-Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and Florida Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' Start/Stop System components are substantially certain to fail before their expected useful life has run.

179.    Audi's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of F.S.A. §§ 672.314 and 680.212.

180.    Plaintiff and Florida Sub-Class Members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Audi's conduct described herein.

181.    Plaintiff and Florida Sub-Class Members were not required to notify Audi of the breach because affording Audi a reasonable opportunity to cure its breach of written Warranty would have been futile. Audi was also on notice of the Defect from the complaints and service requests it received from Plaintiff and Florida Sub-Class Members, from repairs and/or replacements of the Start/Stop Systems or components thereof, and through other internal sources.

182.    As a direct and proximate cause of Audi's breach, Plaintiff and Florida Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff and Florida Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

183.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiff and Florida Sub-Class Members have been damaged in an amount to be proven at trial.

**REQUEST FOR RELIEF**

184.    Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendants, as follows:

a)  An order certifying the proposed Class and Sub-Class, designating Plaintiff as the named representative of the Class and the representative Sub-Class, and designating the undersigned as Class Counsel;

b)  A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Start/Stop System;

c)  An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class

Members with a Start/Stop System that does not contain the Defect alleged herein; and/or compelling Defendants to reform its Warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such Warranty has been reformed;

d) A declaration requiring Defendants to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

e) An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

f) Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged;

g) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiff and Class Members;

h) An award of attorneys' fees and costs, as allowed by law;

i) An award of pre-judgment and post-judgment interest, as provided by law;

j) Leave to amend the complaint to conform to the evidence produced at trial;

k) Plaintiff demands that Audi perform a recall, and repair all Class Vehicles; and

l) Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

185.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated:  August 12, 2020                    Respectfully submitted,


                                           By: /s/*Leonard A. Bennett*
                                           Leonard A. Bennett (VSB #37523)
                                           **CONSUMER LITIGATION ASSOCIATES, P.C.**
                                           763 J. Clyde Morris Blvd., Suite 1A
                                           Newport News, VA 23601
                                           (757) 930-3660 – Phone
                                           (757) 930-3662 - Fax
                                           Email:  lenbennett@clalegal.com

                                           Matthew J. Erausquin (VSB #65434)
                                           **CONSUMER LITIGATION ASSOCIATES, P.C**
                                           1800 Diagonal Road, Suite 600
                                           Alexandria, Virginia 22314
                                           (P) 703-273-7770
                                           (F) 888-892-3512
                                           Email:  matt@clalegal.com

                                           CAPSTONE LAW APC
                                           Steven R. Weinmann*
                                           Tarek H. Zohdy*
                                           Cody R. Padgett*
                                           Trisha K. Monesi*
                                           1875 Century Park East, Suite 1000
                                           Los Angeles, CA 90067

                                           BERGER MONTAGUE PC
                                           Russell D. Paul*
                                           Amey J. Park*
                                           Abigail J. Gertner*
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103

                                           GREG COLEMAN LAW PC
                                           Greg F. Coleman*
                                           Lisa A. White*
                                           First Tennessee Plaza
                                           800 S. Gay Street, Suite 1100
                                           Knoxville, TN 37929


                                           **pro hac vice* applications to follow

                                           *Attorneys for Plaintiff and the Class*